[Civ. No. 3809. Third Appellate District.—June 26, 1929.]

G. W. HOUGLAND et al., Respondents, v. ROTH BLUM PACKING COMPANY, Appellant.

632

Leon E. Morris, Atran & Sheets, Albert E. Sheets, Edward M. Jaffa and Barnett Sumski for Appellant.

Alva A. King and Rutledge & Rutledge for Respondents.

PLUMMER, J.—The plaintiffs had judgment in the sum of $3,531.76 for and on account of the alleged failure of the defendant to fulfill its contract for the purchase of certain sheep.

It appears from the record that on or about the third day of February, 1925, the plaintiffs and the defendant entered into a contract for the sale and purchase of sheep, which contract is in the following words and figures: "This is to certify that Valley Sheep Co. of Colusa, have this 3d day of Feb., 1925, bargained and sold to Roth Blum Packing Co. or order, the following described livestock, and do hereby guarantee the title thereto, viz.: 1550 yearling wethers to receive as they get fat, price per pound 14 cents. Shrink drive of 9 miles. Delivery f. o. b. cars Colusa, take off the deposit of $1.00 per head as delivered. Stock guaranteed to be fat and free from all disease. All cattle and sheep bought subject to Federal or State inspection. Received in part payment for above mentioned stock $1500." Said contract was made in duplicate, each party subscribing separate copies.

In pursuance of this contract it appears that on or about February 17, 1925, 126 head of the sheep referred to were delivered by the plaintiff to the defendant, accepted by the defendant and paid for; that thereafter, and on or about the 18th of March, 1925, an additional delivery was made of said sheep to the number of 168 head; these deliveries were accepted and paid for by the defendant according to the contract price, an allowance being made of the sum of $300 on account of the $1500 deposit made by the defendant to the plaintiff at the time of the entry into the contract, leaving a balance in the hands of the plaintiffs on account of the original deposit in the sum of $1200; thereafter,

and on April 28, 1925, the plaintiffs notified the defendant that they were ready to deliver approximately 500 head more of said sheep; the defendant rejected the tender of said sheep, refusing to accept or pay therefor; on or about June 1, 1925, the plaintiffs tendered all of the balance of the wethers of said band of sheep; acceptance was refused by the defendant, and thereafter, and on or about the fourteenth day of July, 1925, the plaintiffs sold said sheep at auction, crediting the defendant with receipts of such sale, and also crediting the defendant with the value of the wool that had been sheared from the said band of sheep. No controversy is made over the value of the wool, the only question being as to whether tender of said sheep was made according to the terms of the contract. At the time of the last tender made by the plaintiffs to the defendant, the defendant, by its attorney, wrote to the plaintiffs as follows: 1. That performance was not made within the time contemplated by the parties or within the usual time for the fattening of sheep in your territory. 2. That the wethers were not fat and in a deliverable condition within the time contemplated by the parties. 3. That the said wethers are not now in a deliverable condition for the following reasons: (a) That the said wethers are not now fat; (b) That the said wethers are now shorn of their wool which is contrary to the custom in these transactions, also to the understanding of the parties. 4. That by your conduct in shearing said wethers, you have put them in a condition which makes it impossible for you to perform according to the terms of the contract and the understanding of the parties. 5. That the defendant elects to treat your conduct in shearing the wethers as a repudiation of your obligations under the contract. 6. That the sale by you of said wool is taken by the defendant as a repudiation of your obligations under the contract. (We have not followed the exact wording of these objections but have given their substance.) As stated above, no objection is urged on account of the shearing and sale of the wool, it being practically conceded that it was necessary to shear the sheep and sell the wool, and that the wool was sold for the best market price obtainable.

The contract in this case is silent as to time of performance, and under such circumstances section 1657 of the Civil Code is controlling. That section reads, so far as

applicable here, as follows: "If no time is specified for the performance of an act required to be performed, a reasonable time is allowed." This portion of the section was taken up and considered in 6 Cal. Jur., pages 346 and 347, and the authorities there cited, showing that under a contract such as the one we are here considering, the law writes into it the idea of a reasonable time for performance. This reasonable time takes into consideration the condition of the objects or merchandise with which the parties are dealing. It also admits the testimony as to what is a reasonable time for deliverance, taking into consideration the subject of the contract and the condition of the merchandise for the sale and delivery of which the contract is made. In other words, this contract being silent as to time of performance, the law writes into it terms which require a reasonable performance, having in view the subject of the contract and the place and condition of the objects concerning which the contract was made. ▮ Thus, in determining what was a reasonable time for the delivery of the wethers constituting the subject of the contract between the parties to this action, a court would take into consideration their condition on the third day of February, 1925, and the time ordinarily and usually required to enable the plaintiffs to fatten the wethers and make delivery. The court would also take into consideration the kind of feed and care usually given to sheep in the locality where the contract was entered into. ▮ While the contract is silent as to any duties being imposed upon the sellers, the law would write into the contract the obligation on the part of the sellers to take the reasonable and customary means and methods to fatten the sheep within a reasonable time, and tender delivery thereof to the defendant. These principles are all supported by the authorities cited in 6 Cal. Jur. et seq., and need not be further stated herein. ▮ On the part of the appellant it is insisted that it was the understanding of the parties, at the time of entering into the contract, on February 3, 1925, that the wethers would be ready for delivery by March 15, 1925. This argument is based upon the fact that spring lambs are usually coming upon the market about March 15th, or very shortly thereafter, and that when spring lambs come into the market, prices usually decline. This contention, however, is not

supported by anything in the record, other than the fact that we have stated, that when spring lambs are placed upon the market, prices usually decline. There is no testi-mony in the record upon which any such understanding can reasonably be predicated. The record shows that R. T. Carey, the agent of the defendant, inspected the sheep, the subject of the contract being considered, on or about February 3, 1925, and after inspecting the sheep, wrote out the contract. The testimony of this witness is to the effect that it would require from sixty to seventy days to fatten the sheep after the date of the contract. The record further shows that a second delivery of sheep was made and accepted on March 17, 1925. The testimony of the agent of the defendant being as we have just stated, the trial court, outside of the testimony of other witnesses who testified to the same effect, was justified in rejecting the contention of the appellant that the date of March 15th was contemplated by the parties as the time when performance should have been completed.

The whole question as to what was a reasonable time was for the trial court to determine under the testimony submitted to it to establish what was a reasonable time. So far as the appellant is concerned, it seems to have relied simply upon the testimony as to when spring lambs would come upon the market, and that the reasonable time for the delivery of the sheep contracted for would be before the spring lambs were ready for market. This reasoning, of course, is untenable. The reasonable time, as applied to this contract and as applied to the sheep purchased, would be a reasonable time necessary to fatten the sheep constituting the subject of the contract, and have them ready for market, irrespective of spring lambs. The condition of the sheep purchased was known to the defendant on February 3, 1925. The manner of feeding sheep in that locality appears also to have been known. That the defendant may have desired delivery of the sheep before spring lambs came upon the market is an entirely different question. That subject is not in the contract.

So far as there is any testimony in the record on the subject, it is to the effect that the sheep covered by the contract were well fed and kept upon the best possible feed in the locality where the sheep were accustomed to range. Wit-

nesses who were familiar with the range where the sheep were kept testified that it was a good range; that the feed consisted of burr clover, alfilaria and other wild grass. The testimony of Mr. McCall, a witness called for the plaintiffs, was to the effect that the sheep were at all times kept on good feed; that in the latter part of April, from eighty to ninety per cent of the sheep were getting marketable, and on June 1st, at least niney-five per cent were fit for market. The court in its findings found as follows: That cross-defendants (meaning plaintiffs) did not fail or neglect or refuse to fatten said wethers or deliver the same to cross-complainant (meaning defendant) as provided in said contract. To explain the terms used in this finding we may here state that the defendant filed a cross-complaint seeking recovery of $1200, the balance of the $1500 paid to the plaintiffs on the date of the execution of the contract. This cross-complaint specifically set forth that the plaintiffs, being the cross-defendants named in the cross-complaint, had not fattened the sheep according to contract. The appellant introduced the testimony of a few witnesses to the effect that it was their understanding when wethers were purchased at about the time of the execution of the contract in controversy, they would expect delivery to be made of the sheep prior to the time when spring lambs would come upon the market, but this, however, as we have stated, does not controvert the finding of the trial court that the plaintiff did what was necessary to fatten the sheep within the time specified in the contract, which we have said, necessarily must mean within a reasonable time. We understand that there was some testimony to the effect that a somewhat longer time would be necessary than that stated by the witness Carey, that green feed was necessary to fatten the sheep, and that they would not fatten upon dry feed.

 We will now consider the appellant's contention that its demurrer to the plaintiffs' complaint should have been sustained. The complaint, it is true, does not allege that the plaintiffs complied with their terms of the contract, nor does it allege that the plaintiffs tendered delivery within a reasonable time. These are necessary matters to appear in the case, and should be alleged and proved. This failure of the complaint to contain allegations as to performance on the part of the plaintiffs was raised by the defendant's de-

murrer, and the defendant's demurrer should have been sustained with leave to the plaintiffs to amend. This, however, does not necessitate a reversal of the judgment. The question as to whether the sheep were kept upon proper feed; as to whether the plaintiffs neglected to fatten the sheep, etc., as we have just stated; and what the plaintiffs did with the sheep; and the time when they were fattened and tendered, were issues which were tried out as fully and completely as though the allegations to which we have referred had been contained in the plaintiffs' complaint. Under such circumstances the error of the court in failing to sustain the defendant's demurrer is cured by section 4½ of article VI of the Constitution, where it is specified that error as to a matter of pleading is not reversible unless it has led to a miscarriage of justice.

As the questions at issue were as fully tried out as though the complaint had contained the allegations mentioned, we do not well perceive how the lack of the allegations in any manner resulted in prejudice to the defendant. While the trial court does not, in as clear and precise terms as might be desired, find that the plaintiffs complied with their terms of the contract, such fact is included within the language used because if the plaintiffs did not fail or refuse or neglect to fatten the sheep and to deliver the same as provided in the contract, they necessarily must have fattened and tendered delivery of the sheep according to the terms of the contract, which would mean within a reasonable time after the date of the execution of the contract.

We do not deem it necessary to review the authorities cited by the appellant as to the manner in which a contract in which time of performance is unmentioned, should be construed; for the reason that we find that all the authorities cited sustain just what we have stated herein, that the law writes into such a contract the requirement of performance within a reasonable time, but that reasonable time is to be determined by the court in view of the condition of the property at the time of entering into the contract and what is necessary to be done to place the article contracted for in condition fit for delivery. There is nothing in the record to show that such reasonable time should be limited to a period preceding the date when spring lambs should come upon the market. If such had been the contemplation of

the buyer, the insertion of such a term in the contract would have been a matter of but little effort. It is not there, as we have said, and the court was not limited by such testimony in the determination of what was a reasonable time to comply with the terms of the contract in this case even though the court should take into consideration all the conditions and customs of the trade. The sheep in this case were inspected by the buyer, and the defendant had knowledge of what would be required to place them in condition for the market.

It is next contended on the part of the appellant that the damages allowed were and are excessive. In this case section 3049 of the Civil Code governs. The property was resold at auction, and if sold within a reasonable time, the plaintiffs were entitled to judgment against the defendant equal to the difference in the price obtained therefor and the price contracted to be paid. Section 3311 of the Civil Code, in subdivision I, refers to section 3049, and specifies the amount which the seller is entitled to recover, which is as we have stated above.

It is further contended that the plaintiffs failed and neglected to make sale of the sheep within a reasonable time, and in this behalf attention is called to the testimony of the plaintiffs that they made no effort to sell until the property was sold at public auction, and that some little time elapsed in giving notice of the public sale. Whether this delay did or did not result in prejudice to the appellant does not appear. The testimony set out in appellant's brief in support of this claim is not correctly apprehended, as appears from the following taken from the transcript: "Q. Do you know, as a matter of fact, what market prices are around July 4th? A. Around 8 cents. Q. And these lambs brought around how much in July? A. 7½ cents." This testimony is relied upon by appellant to support its contention that the price declined from eight cents to seven and one-half cents at the particular time when the lambs mentioned in the contract were being disposed of. In making this argument the word "prices" is changed to the word "price," and the word "are" is changed to the word "was." This inadvertent change in the testimony undoubtedly led to the incorrect conclusion advanced by appellant. A reading of the testimony shows that it was a general question and a

general inquiry as to the fact that the price of lambs ordinarily declined at that season of the year. This appears from the question and answer preceding what we have stated, to wit: "Q. Is there anything in the general trend of prices, or can you point to the trend of prices in any year in which the lamb market goes up from June to July? A. I don't know of any particular year but the market seems to be at the bottom a lot of times, a falling market, and it finally comes back a little. After the scare is over people holding that stuff will push it on the market." The law is well settled that if the seller fails to exercise reasonable diligence, the price he might have obtained may be shown to reduce his damages. (8 Cal. Jur., pp. 786, 787.) There is no such showing in this case, and therefore, the matters advanced by appellant are purely matters of speculation. It is likewise argued by appellant that during the time taken by the plaintiff to make resale of the lambs, that they increased in weight. Whether this is true or not true does not appear from the testimony. There is some testimony to the effect that between the date of sale and the date when the lambs were weighed there was practically no increase in weight. By reason of the fact that the defendant failed to accept delivery of the lambs at the time when they were ready for delivery, and as found by the trial court, any slight changes in the weight of the sheep would be due to the failure and refusal of the defendant to fulfill its contract, and unless such change was shown to be due to the neglect and failure of the sellers, so as to materially affect the rights of the defaulting buyer, we do not think that the conclusion of the trial court should be reversed.

In addition to the finding of the trial court which we have particularly pointed out, the court also found that all the allegations of the plaintiffs' complaint are true and correct. While this form of making findings has been upheld, it cannot be approved as the best method of aiding an appellate court when called upon to review questions decided in the court below.

It follows from what we have said that the trial court was correct in denying the defendant any relief by reason of its cross-complaint.

The judgment is affirmed.

Thompson (R. L.), J., and Finch, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 26, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 22, 1929.

All the Justices concurred.