[Civ. No. 5833. Third Appellate District.—October 1, 1937.]

ALFRED KUHN, Respondent, v. VALLEY MEAT COMPANY (a Corporation), Appellant.

Ray Manwell, Ivan C. Sperbeck and Charles A. Wetmore, Jr., for Appellant.

Erling S. Norby for Respondent.

PLUMMER, J.—The plaintiff had judgment against the defendant for the sum of $1976.35, on account of three causes of action set forth in his complaint. From this judgment the defendant appeals.

On the first cause of action the plaintiff had judgment for the sum of $794.85, and interest thereon at the rate of 7 per cent per annum from May 22, 1934, balance due for and on account of certain lambs sold and delivered to the defendant by the plaintiff. Upon the second cause of action the plaintiff had judgment against the defendant for the sum of $1,000, as and for damages sustained by him by reason of the refusal of the defendant to comply with the contract hereinafter set forth. Upon the third cause of action the plaintiff had judgment against the defendant for the sum of $43.44, costs of trucking, etc.

The plaintiff in the action is the owner and raiser of sheep, and is also engaged in the business of buying and selling sheep, and is especially engaged in furnishing lambs for the market. The defendant is a butcher at Marysville, California, and is engaged in the buying of lambs for the market as well as butchering of lambs.

On or about the 3d day of February, 1934, the plaintiff and defendant entered into the following contract:

"This contract made on Feb. 3, 1934, between Alfred Kuhn of Chico, seller, and Valley Meat Co. of Marysville, California, buyer; Witnesseth: That, for and in consideration of the sum of $2000.00 dollars on signing of this contract, to be made as follows: 2000.00 to be paid on Mar. 1st, 1934, on the execution and delivery of this contract, receipt whereof is hereby acknowledged, and the balance upon delivery and acceptance of the livestock hereinafter mentioned, said seller agrees to sell, convey and deliver to said buyer, or its assigns, and said buyer agrees to buy the following livestock: 90% of 8000 lambs more or less at 7½c per lb, delivery to be made between 1st day of Mar. and 1st day of June. Lambs to be stood in dry corral 12 hrs. before working. We are to deduct 50c per on lambs as received.

"Delivery of said livestock shall be f. o. b. cars at nearest shipping point. All said livestock shall be in good, healthy and merchantable condition and shall be free from all diseases, and shall pass both Federal and State brand and health inspection at the time of delivery of the same.

"Said seller hereby warrants and represents that said livestock are free from all incumbrances, liens, or adverse claims, except those herein specified. This contract is subject to all Federal and State embargoes, quarantines and regulations affecting the movement or transportation of livestock and in

the event that the movement or transportation of livestock is prohibited or impaired by reason of an embargo or a quarantine in effect at the time of the execution of this contract, or promulgated before the delivery of said livestock on board cars, said buyer may, at its option, terminate this contract, and the amount of money paid by said buyer to said seller and all amounts of money paid by said buyer for maintenance of said livestock, while the same may be detained by reason of such embargoes, quarantines and regulations, shall be repaid to said buyer on demand.

"All the terms of this contract are herein set forth, and no change in, or addition to the terms or provisions hereof shall hereafter be made, unless approved in writing by said seller or said buyer.

"In witness whereof said seller and said buyer have executed this contract, the day and year first above written.

"Valley Meat Co.

"By J. W. Johnson, Buyer

"Alfred Kuhn, Seller."

This contract is silent as to any deliveries of the lambs mentioned therein, save and except that .the deliveries are to·be made between the dates of March 1st and June 1st. The record, however, discloses that what is called the "matured" lambs occurs· at different intervals, and that during the interval of time mentioned in the contract a certain portion of the lambs referred to therein would mature and be ready for the market prior to the 1st day of June, and also prior to many others of the lambs included in the purchase and sale; that it was the intent of the parties that the lambs should be delivered by the seller to the purchaser upon such dates and at such times as the lambs maturing first would be in a merchantable condition. We have not been pointed to any portion of the testimony describing merchantable lambs, but a reasonable inference would seem to be, lambs fat enough to be fit for the market.

Upon this appeal the chief contention made by the defendant is as to the failure of the court to find upon the issue as to whether the vendor or the vendee should, by usage, have the right to determine when any certain portion of the lambs involved in the sale were in a merchantable condition, fit for delivery, and when delivery should be made.

In the plaintiff's complaint there is an allegation that by usage the seller was to determine when the lambs were suffi-

ciently fat to be merchantable and proper for delivery. On the part of the appellant no allegation is made in its pleadings as to usage and custom, the appellant's pleadings simply denying the allegations of the complaint as to usage and custom.

Considerable testimony was introduced, and the court found against the allegations in the complaint, but did not find that there was any usage or custom entitling the appellant or purchaser to decide when deliveries should be made. The failure to find upon this usage, other than as stated, is set forth as grounds for reversal. However, from what is hereinafter stated it does not appear to us that the failure of the court to find further on the ground of usage and custom is material.

It is further contended on the part of the appellant that as the plaintiff was a broker in the handling of sheep and was accustomed to buying and selling of lambs, and that if, at any time during the period mentioned, he became possessed of other fat lambs, it was his duty to deliver the same to the appellant. This contention, however, appears to us to be untenable.

The allegations of the appellant's cross-complaint, found to be true by the court, are directly opposed to the contentions in this particular, made by the appellant upon this appeal. The second paragraph of the appellant's cross-complaint reads: "Defendant is informed, believes, and therefore alleges that on the 3rd day of February, 1934, plaintiff was the owner of 8000 head of lambs; that on said date said plaintiff entered into an agreement in writing with this defendant, whereby plaintiff agreed to sell to this defendant 90% of the whole number of said lambs; that a copy of said agreement is attached to plaintiff's amended and supplemental complaint marked 'Exhibit A', and to said exhibit reference is hereby made for all purposes."

Partial payment for said lambs is further alleged. The agreement itself shows upon its face that it refers to lambs then owned and possessed by the plaintiff. In the second paragraph it refers to 90 per cent of 8,000 lambs. Had the sale been for 8,000 lambs possessed by the plaintiff at any time during the period mentioned, there would have been no limitation of 90 per cent. In the fourth paragraph we find the following: "Said seller hereby warrants and represents

that said livestock are free from all incumbrances, liens or adverse claims, except those herein specified.'' This is a specific reference to lambs then in existence and lambs owned and possessed by the plaintiff, and as to their being free from defects.

The record shows that at or about the time of the execution of the contract referred to herein, an agent of the appellant made an inspection of the different bands of sheep where the lambs were to be found; and also, the testimony further shows that at the time of the execution of the contract the plaintiff was the owner and in possession of about 8,500 ewes, so that the reasonable interpretation of the contract, as well as the pleadings to which we have referred is to the effect that the contract of sale and purchase referred to the lambs then owned by the plaintiff, which were to be delivered according to the conditions therein stated to the extent of 90 per cent thereof (more or less). Of the lambs referred to the record shows that the plaintiff delivered to, and the defendant received, 3,045 out of an entire number of 7,168. Of the lambs which the appellant refused to receive, it appears that the plaintiff sold to other parties 1807 and retained in his possession 2,316. The price received by the plaintiff for the 1807 lambs sold by him to other parties than the appellant after the alleged breach of the contract by the appellant, and also the value of the lambs retained by the plaintiff, were calculated and considered by the court, and the damages suffered by the plaintiff by reason of the breach of the contract on the part of the appellant, as found by the court, was the sum of $1,000.

The appellant, in support of its contention that the court erred in not finding that the usage and custom pertaining to the buying and selling of lambs under contract such as was executed between the parties hereto, sets forth that the appellant at different times demanded deliveries of lambs, and that the plaintiff refused to deliver the same on the grounds that they were taking on flesh rapidly, and that he was entitled to determine when delivery should be made.

There is no testimony in the record, or at least none has been called to our attention, which would indicate or lead to the conclusion that any number of lambs were fat enough to be called merchantable, and therefore in a condition to be delivered according to the intent and terms of the contract at such times. Thus, no matter what the usage might be,

unless there was a showing that there were lambs, merchantable, as we have described, the failure of the court to find on the issue of custom, would be wholly immaterial.

As to the oral agreements alleged in both the answer and cross-complaint, the finding of the court is against the same, and of course such oral testimony came within the prohibition of section 1625 of the Civil Code.

As to when the lambs were to be delivered, we think this case comes within the holding of the court in the case of *Hougland* v. *Roth Blum Packing Co.*, 99 Cal. App. 631 [279 Pac. 159], where the subject of the delivery of sheep, and the time for delivery was considered extensively, and the court held, where time is unmentioned for the execution of the contract, it meant a reasonable time, taking into consideration all the conditions surrounding the subject of the contract. Applying that rule to the case at hand, it would appear, following section 1657 of the Civil Code, that the intent of the contract in this case was and is that deliveries of lambs should be made as they matured and became fat enough to be called merchantable, and in that condition when lambs are delivered to the market for the purpose of being slaughtered and placed on sale through the usual courses of handling such merchandise.

It is undisputed that the appellants refused to take final deliveries of the lambs mentioned in the contract, the contention being that the plaintiff had been selling what are called "tops", meaning fat lambs purchased by him after the execution of the contract referred to herein, and the contention being further made that the appellant was entitled to such "tops" or fat lambs under and by virtue of its contract with the plaintiff, as well as fat lambs from bands owned by the plaintiff at the time of the execution of the contract.

From what we have said, this contention of course was properly held untenable by the court, and did not constitute a valid reason for refusing to accept final delivery.

Finding no reasons, in any of the contentions made by appellant, for reversal, it follows that the judgment must be, and the same is, hereby affirmed.

Pullen, P. J., and Thompson, J., concurred.