[Civ. Nos. 20236, 20252, 20381, 20382. First Dist., Div. One. Jan. 25, 1963.]

LOUISE PALMQUIST, Plaintiff and Respondent, v. J. ADRIAN PALMQUIST, Defendant and Appellant.

(Four Cases)

324

Francis T. Cornish for Defendant and Appellant.

Stark & Champlin, Franklin C. Stark and John F. Banker for Plaintiff and Respondent.

BRAY, P. J.—Four appeals are consolidated on appeal. Defendant appeals from the judgments in two of the appeals respectively, and from the orders in the other two, all arising in the separate maintenance action hereinafter discussed.

QUESTIONS PRESENTED

1. Appeal No. 20252. Is the Lercara judgment appealable?
2. Appeal No. 20382. (a) Did plaintiff breach the 1960 agreement? (b) Is the McGee judgment valid?
3. Appeal No. 20381. Is the award for plaintiff's support valid?
4. Appeals No. 20236, No. 20381, No. 20382. Are the attorneys' fees awarded excessive?

1. APPEAL. No. 20252. THE LERCARA JUDGMENT IS NOT APPEALABLE.

Plaintiff and defendant were married on April 8, 1956. De-

fendant is a personal injury lawyer of considerable years' practice. Plaintiff is a doctor of medicine and a specialist in gynecology. The parties separated after approximately three years of marriage. There are no children. December 3, 1959, the parties entered into a written property settlement agreement. January 18, 1960, defendant filed an annulment action in Santa Clara County. February 9, 1960, plaintiff filed in Alameda County action No. 304611 for separate maintenance. June 16, 1960, the parties entered into a further agreement which was intended to settle all then existing disputes between them. Plaintiff went to Reno, Nevada, on July 1 to establish residence for divorce purposes, and six weeks thereafter filed suit there for divorce. Defendant appeared and contested the action. It was still pending at the time of judgment herein.[1] Plaintiff filed a supplemental complaint in action No. 304611, praying that compliance by defendant with said agreement be ordered. By pretrial conference agreement and order certain issues relating to the property settlement agreements were severed and tried. The court, Honorable Lewis E. Lercara presiding, found against defendant on those issues, and rendered judgment[2] to the effect that the 1960 contract was valid, binding and not against public policy; that because of the validity of that contract and the court's finding that the contract of 1960 superseded and replaced in its entirety the 1959 agreement, all issues concerning the latter were rendered immaterial. Defendant purported to appeal from this judgment.

■ As there can be only one judgment in a case, the Lercara judgment, which was only an interlocutory judgment or order dealing with severed issues, is not appealable. That judgment did not determine all the issues in the case. Had that judgment been of the type which would have barred any other proceedings in the case, then it would have been appealable.

The situation is similar to that provided for in section 597, Code of Civil Procedure, which provides that when an answer pleads the statute of limitations, a prior judgment, another action pending, ''or sets up any other defense not involving the merits of the plaintiff's cause of action but constituting a

---

[1]At argument in this court, it appeared that on June 29, 1962, plaintiff obtained a decree of divorce from defendant in Storey County, Nevada, and that the prior Nevada divorce action was dismissed by stipulation of the parties.

[2]Hereinafter referred to as the ''Lercara judgment.''

bar or ground of abatement to the prosecution thereof,'' such defense may be tried before the trial of any other issue in the case. If the judgment is in favor of the defendant the plaintiff ''may appeal from such *interlocutory* judgment.'' (Emphasis added.) However, if that judgment is in favor of the plaintiff, trial of the other issues must follow and the interlocutory judgment is made reviewable upon appeal from the final judgment. (See *Plunkett* v. *Hill* (1962) 209 Cal. App.2d 85, 87-88 [15 Cal.Rptr. 816].)

Actually, the Lercara judgment, so-called, is erroneously designated. It is similar to the judgment considered in *Plunkett, supra,* where the court said (pp. 87-88): ''In the present case, upon the trial of the special defenses, the court ruled in favor of the plaintiff as to one cause of action and in favor of defendants as to the other cause of action; and entered a judgment accordingly. Since the ruling of the trial court, upon the special defenses, was not in favor of defendants as to the entire action, a judgment should not have been entered. Under such circumstances the order with respect to the trial of the special defenses was erroneously denominated a judgment. That order was not a judgment and was not appealable, but it would be reviewable on appeal from the judgment entered after the trial of the other issues which, under the order, were reserved for trial (i.e., the issues as to the second cause of action). The document, erroneously denominated a judgment, is in effect a nonappealable interlocutory order which is a record or memorial of a preliminary determination of part of the issues in the case. The contemplated procedure is that such an order will be included in the judgment, as to the entire case, which will be entered after a trial of all the issues.''

Judge McGee recognized the Lercara judgment as merely an interlocutory order for his judgment stated that the Lercara judgment ''is hereby made final.''

Although the purported appeal from the Lercara judgment must be dismissed, that judgment must be reviewed on the appeal from the final judgment. Thus, we will consider its validity hereinafter in appeal No. 20382.

2. APPEAL No. 20382. (a) PLAINTIFF DID NOT BREACH THE 1960 AGREEMENT.

After the entry of the Lercara judgment the parties proceeded to trial on other issues in the case, Honorable Ralph

McGee presiding. A final judgment[3] was then entered, making the Lercara judgment final, giving plaintiff judgment against defendant for $14,770, plus interest, $1,000 per month for 10 months (or until such earlier time as plaintiff shall die or remarry); ordering each party to perform every obligation of the 1960 contract undertaken to be performed by him or her; ordering payment to plaintiff of attorneys' fees of $7,350 and $932.86 (these amounts are like amounts to those ordered paid by certain pendente lite orders, and are not to be paid twice); ordering defendant to deliver plaintiff a dismissal with prejudice of the annulment action hereinbefore mentioned, and providing that the clerk of the court dismiss that action if defendant does not do so; restraining either party from harassing the other; finding that all issues concerning separate maintenance are rendered moot and need not be decided; and reserving to the court the power until the amounts ordered to be paid are satisfied to order payment of support, maintenance and attorneys' fees and costs, and to modify or enforce the restraining order.

Defendant's brief is a hodgepodge from which it is difficult to determine exactly what his contentions are. Much of the matters he relates happened prior to the 1960 agreement and were merged into it. Apparently his main contention is that plaintiff breached that agreement at a time when he was not in default thereunder and that such breach caused a complete failure of consideration and hence he was entitled to rescind it.

Actually, as will hereafter appear, this whole bitter, expensive and time-consuming litigation resulted from defendant's taking the position that plaintiff had violated the contract (which did not provide any time for delivery of the dismissal) because she took five days to sign and return a dismissal of this action (a dismissal which under the agreement could not be used for some time).

The 1960 agreement referred to the 1959 agreement as being in litigation between the parties, to this action, the annulment action hereinbefore mentioned, and to two Santa Clara County actions, then pending, and to certain other actions, and stated that the parties desired amicably to settle their differences and their property rights and "to dismiss said suits with prejudice." The 1959 agreement is then reaffirmed and fully incorporated in this agreement; certain paragraphs thereof, however, are deleted, and new provisions inserted in

---

[3]Hereinafter referred to as the "McGee judgment."

lieu thereof. (We will only consider the provisions of said agreement which were in issue at the trial.) Defendant agreed to deliver to plaintiff's attorneys dismissals with prejudice of the Santa Clara County actions, and in respect to one of them, a quiet title action, defendant agreed to deliver to plaintiff a quitclaim deed to the property therein described. The agreement then provided that certain items of personal property were separate property of the particular spouse as there set forth. Each party agreed not to molest the other. In the event either party is required to bring action to obtain performance under the contract the party required to bring the action, if the action is determined in his or her favor, will be entitled to attorneys' fees. If the other party is successful such party will be entitled to attorneys' fees. A mutual release appears of all claims other than those expressed. Nothing in the agreement is to be considered condonation or a bar to divorce by either party. The supplemented agreement can be incorporated in any court decree and its conditions ordered to be performed. A collateral letter agreement was entered into between the attorneys for the parties to the effect that the temporary order in this action restraining defendant from molesting plaintiff would continue in full force and effect, unaffected by the decree which plaintiff was to get in the Nevada divorce action, and would be dismissed only on the entry of an appropriate decree in this case giving plaintiff protection as respected the personal restraining orders theretofore issued herein. The 1960 agreement was to be amended to include this understanding. It was not so amended. On June 16, 1960, and before the 1960 agreement was signed, defendant objected that it did not protect him against delay or refusal on plaintiff's part in carrying out an oral agreement made with defendant to secure a Nevada divorce. The parties then agreed orally that plaintiff would deliver to defendant's attorney a dismissal of this action to be held by him subject to the letter agreement, and to be filed if plaintiff failed diligently to obtain the Nevada decree. The agreement was then signed without change and on June 27 the dismissal was received by defendant's attorney. The attorney did not think that the covering letter gave him the authority required by the 1960 agreement to file the dismissal in the event plaintiff did not diligently pursue the Nevada divorce. However, defendant's attorney never asked for a writing to the effect that this purported limitation on his authority be eliminated.

At the hearing of defendant's application for injunction,

defendant notified plaintiff that he was rescinding the 1960 agreement on the ground of fraud and mistake because the clause requiring the delivery of a dismissal was not in the written agreement.

The question presented to the trial court in the severed issue trial was "What was the effect of the purported . . . [1960 agreement] on the validity of the . . . [1959] agreement." The court found that when the 1960 agreement was executed, neither defendant nor his attorney had been advised by plaintiff's counsel that a clause which had been in an earlier draft of a proposed agreement (which draft defendant had reviewed and rejected) was eliminated from the agreement signed by the parties. That clause was to the effect that a dismissal of the separate maintenance action would be delivered to defendant's attorney upon the execution of the agreement. The court further found that the oral understanding of the parties was that such a dismissal would be delivered to defendant's attorney to hold, but that it could not be used immediately, but was only to be used upon the conditions that plaintiff did not diligently proceed with the Nevada divorce, and on the entry of "whatever appropriate California Decree shall give like protection to Mrs. Palmquist as respects the personal restraining orders in said temporary order."[4]

The court found that the dismissal was in fact delivered to defendant's attorney on June 27, 1960, and was now being held by him; that there was no fraud, misrepresentation or negligence on the part of plaintiff or her attorney in the preparation, execution, or otherwise, of the 1960 agreement nor any fraud in the elimination of the language aforesaid; that defendant's mistake as to the agreement containing this language was a unilateral one, but said mistake is not material as defendant and his attorney knew that the dismissal could not be used immediately but was subject to the above conditions, and that the elimination of the language from the agreement did not make it unfair. The court further found that on July 5, 1960, defendant and his attorney became aware of the mistake and took no steps to promptly rescind said agreement

[4]Defendant concedes, even urges, that Judge Lercara properly found that the true agreement of the parties consisted of the written agreement of June 16, 1960, the letter of the same date to plaintiff's attorneys signed by defendant and his attorneys, the oral understanding between plaintiff and defendant and their respective counsel hereinbefore mentioned and a certain guaranty by defendant's attorney to plaintiff. (The latter is not pertinent to this appeal.)

and at no time offered to restore plaintiff to the position occupied by her prior to entering into the agreement; that plaintiff has performed the contract on her part and that defendant has paid no part of the support and maintenance payments as provided in the agreement nor has defendant delivered the dismissal of the Santa Clara County annulment action nor the quitclaim deed, both of which he agreed to deliver.

While as to some of the matters found there is a conflict in the evidence, there is substantial evidence to support all of the findings. No purpose is to be served by detailing the evidence.

Defendant at one time contended that the omission in the 1960 agreement of the additional matters which the Lercara judgment held were a part of the agreement (and which plaintiff concedes were) constituted a fraud upon him, and that therefore the agreement was void or voidable, and that the 1959 agreement was thereby restored to full effect. He now contends that the supplemented agreement is valid but that plaintiff, and not he, breached it, and that because of such breach he rescinded it. As will hereafter be shown, he contends, nevertheless, that plaintiff is bound by the agreement, but that he is not. The evidence clearly shows that, as found by the court, any mistake concerning the contract was unilateral. Defendant does not contend that plaintiff or her attorney made any representation that the omitted language was in the agreement. At the time defendant signed the agreement he was acting under advice of his attorney. They simply failed to notice that the language was not there. In any event, under the circumstances and the oral understandings, the omission was unimportant and immaterial.

The court correctly ruled, too, that by the 1960 agreement the 1959 agreement was reaffirmed by the parties, although expressly modified in certain respects, and that as the 1960 agreement was valid and had been performed by plaintiff, the issues defendant had attempted to raise concerning the 1959 agreement were not material. The evidence also shows that in the making of the 1960 agreement as well as the 1959 agreement, both parties were represented by attorneys and were dealing with each other at arm's length.

The dismissal of this action was drafted by defendant's attorney and by him sent to plaintiff's attorney who received it on June 20. He had it executed by plaintiff and on June 25 mailed it to defendant's attorney, who received it June 27. This was 11 days after the execution of the contract.

Defendant contends that the contract required that the dismissal be delivered immediately, and that he was entitled to rescind the contract because of the delay. As we have hereinbefore pointed out, he made no attempt to promptly rescind, and made no offer to restore. Moreover, he stood on the contract in bringing a motion to dismiss this action, contending that the contract constituted a bar to the action. At the time of the execution of the 1960 agreement defendant was in arrears under a pendente lite support order requiring him to pay her $1,000 per month. Contempt proceedings therefor were pending. In the 1960 agreement plaintiff agreed to forego this support. In attempting to rescind, he made no offer to resume these payments. ▇ Where a party has full knowledge of facts which would warrant his rescinding an agreement but nevertheless accepts and receives benefits accruing thereunder, waiver of the right to rescind will be presumed. (See *Neet* v. *Holmes* (1944) 25 Cal.2d 447, 458 [154 P.2d 854].)

▇ The contract is silent as to the time of delivery of the dismissal. Defendant contends that he needed the dismissal immediately to show a prospective buyer of some property of defendant, which property he contends had to be sold to raise the money to pay defendant's $10,000 note to plaintiff, and that plaintiff's delay in sending the dismissal caused him to lose the sale. However, there is no evidence that plaintiff or her attorney knew of this impending sale or any necessity for hurry in delivering the dismissal, particularly as it could not be used immediately. Defendant's attorney took approximately four days to deliver to plaintiff's attorney the form of dismissal to be signed by her. This did not evidence any need for haste. ▇ Moreover, as the contract was silent as to the time of delivery a reasonable time for performance must be implied. (Civ. Code, § 1657; see *Kuhn* v. *Valley Meat Co.* (1937) 23 Cal.App.2d 25 [72 P.2d 164].) ▇ What is a reasonable time is a question of fact. (See *Pico Citizens Bank* v. *Tafco Inc.* (1962) 201 Cal.App.2d 131, 137 [19 Cal.Rptr. 905].) ▇ The court correctly found that under the circumstances the dismissal was delivered within a reasonable time.

Defendant contends that plaintiff breached the agreement by (1) refusing to deliver the dismissal as agreed, (2) by failing to dissolve the marriage, and (3) by pursuing the separate maintenance action. (1) As we have shown, the dismissal was delivered in a reasonable time.

(2) Actually there was no agreement by plaintiff that she would obtain a Nevada divorce. Undoubtedly it was contemplated by the parties that she would do so, but there was no definite agreement to that effect. For that reason, plus the fact that plaintiff on July 1, 1960, reestablished her Nevada residence and in due time commenced an action there for divorce, the progress of which was blocked by defendant's contest, defendant cannot contend that plaintiff breached the agreement in that respect.

(3) As to plaintiff's pursuing this action, it was agreed that the action would remain pending until after plaintiff obtained a Nevada divorce *and* a decree in this action restraining defendant from molesting plaintiff. Before plaintiff could obtain such a decree, defendant filed herein a notice of motion to dismiss this action upon the ground that the 1960 agreement constituted a bar to the action, the agreement that he contended was void and that he had theretofore rescinded because of plaintiff's alleged failure to perform it. His inconsistency in urging that plaintiff was bound by the agreement while he was not, supports the testimony of plaintiff's attorney who represented her in the making of the agreement, that immediately after the agreement was signed, when the attorney stated, in effect, that the agreement ended all difficulties between the parties, defendant stated, "Nothing is over . . . I am just getting started."

(b) THE MCGEE JUDGMENT IS VALID AND ENFORCEABLE

As before stated, the judgment in No. 20252 was an interlocutory judgment. After its entry defendant, despite his persistent claim that the agreement is a bar to this action, has refused to perform it. The case then proceeded to trial on certain issues determined at the pretrial conference, the only ones important here being (1) "Is the plaintiff entitled to the enforcement of the settlement agreement of June 16, 1960, and the nature and extent of her rights relative thereto;" and (2) "What Attorneys' Fees and/or Costs, if any, should be awarded plaintiff and/or her attorneys for services rendered and/or costs incurred from and after February 3, 1961."[5]

Judge McGee determined that the Lercara judgment had determined that the 1960 agreement was valid and binding on the parties, and then ordered that because of its terms, the separate maintenance portion of this action became moot; that the terms of the agreement be enforced as to both

[5]The Lercara judgment was entered January 3, 1961.

parties, and that each party be restrained from molesting the other party.

Even though defendant's counsel stated to Judge McGee just before the submission of the case that the appellate court in the event of an appeal "would have to say that your Honor correctly acted upon the judgment and, as a matter of fact, if I were a judge trying the case, I would have to do the same thing. I think that your Honor's position in relying upon Judge Lercara is legally sound . . . I think Judge Lercara's decision is wrong, but I think your Honor is correct in following it, whether it is erroneous or not," defendant contends that Judge McGee should have relitigated the question of the validity of the 1960 agreement, should have determined it void and that the 1959 agreement was still in effect. It is not clear whether defendant still so contends. However, there can be no question but that the validity of the 1960 agreement was fully and properly determined by Judge Lercara, and that therefore, Judge McGee was correct in refusing to relitigage that question.

Defendant contends further that Judge McGee erred in refusing to permit defendant to offer evidence on certain matters as to which defendant made an offer of proof. The first offer was to prove "that the Plaintiff and her counsel failed for a period of ten days pursuant to the provisions of the agreement as found by Judge Lercara to deliver a dismissal [of this action with prejudice] to the Defendant's counsel . . . to be held by Defendant's counsel subject to the conditions that, (1) If the Plaintiff proceeded with diligence to obtain a divorce decree, to acquire residence in Nevada and to obtain a divorce decree in Nevada, that the dismissal should not be filed until the Plaintiff obtained an order of a California Court establishing the Nevada decree as a valid decree. On the second condition that if the Plaintiff failed with due diligence to acquire a residence in Nevada and proceed with a divorce action and obtain a decree in Nevada, that then the dismissal could be filed notwithstanding the decree had not been obtained," and that even "to this date" plaintiff has not given defendant authorization to file the dismissal in the event that plaintiff did not proceed with due diligence to obtain a divorce in the State of Nevada.

Judge McGee correctly held that all these matters had been adjudicated in the Lercara findings and judgment. There the court held that the 1960 agreement between the parties included the oral agreement that the dismissal would be held

by defendant's counsel on the very conditions now specified in defendant's offer of proof; that the dismissal was mailed to defendant's counsel on June 25, 1960 (the evidence showed that it had been received from defendant's counsel for signing by plaintiff only five days before) and that the dismissal was still being held by said defendant's counsel. Under Judge Lercara's judgment defendant's counsel was holding the dismissal upon the very conditions which he now wanted to go into again. Thus, there was no further issue on this subject to be tried.

Defendant's second offer of proof was to the effect that because of the alleged failure of plaintiff to deliver the dismissal promptly, defendant was unable to sell certain property from the proceeds of which sale he intended to pay his obligations to plaintiff under the agreement. Defendant offered to prove that by the loss of the sale he had been damaged in the sum of $30,000. Judge Lercara had found that plaintiff had performed her obligations under the contract, and hence this matter had already been litigated. Moreover, as we have hereinbefore pointed out, the contract did not specify a time of delivery of the dismissal; therefore, plaintiff had a reasonable time in which to deliver, and did deliver within a reasonable time. Defendant contends that in view of the fact that he had a sale pending, five days' delay was unreasonable. However, neither in the voluminous evidence before Judge Lercara nor in the offer of proof before Judge McGee, was there any indication that plaintiff knew of any necessity for hurry in the delivery of the dismissal. Again, it must be kept in consideration that this dismissal, under the very conditions claimed by defendant, could not have been filed for a considerable length of time after receipt by defendant's attorney.

A third offer of proof was to show that plaintiff had breached the 1959 agreement by bringing this action. Judge McGee properly rejected this offer as the Lercara judgment held that that agreement was merged in the 1960 agreement. This action was filed prior to the execution of the 1960 agreement and is referred to in it. If there was any violation of the 1959 agreement by the bringing of this action such violation was waived by defendant.

These offers of proof demonstrate on what an insubstantial foundation this long-drawn-out lawsuit is based. Judge McGee properly refused to try these issues over again, and had he

retried them, his judgment could not have been different than it is.

Although defendant now insists that the 1960 agreement is a valid agreement, it appears from his briefs that for some reason he contends that the 1959 agreement bars the bringing of this action. As before stated, the 1960 agreement was entered into after this action was commenced, recognizes its existence and provides that it shall continue until the agreed restraining order is obtained. That the 1960 agreement superseded the 1959 agreement insofar as there is any conflict in their terms cannot be gainsaid. It was intended to compromise all disputes between the parties. (See *Shriver* v. *Kuchel* (1952) 113 Cal.App.2d 421, 425 [248 P.2d 35].)

The McGee judgment in addition to making the Lercara judgment final and determining that all issues concerning separate maintenance were moot, gave plaintiff judgment for $14,770 plus interest, $1,000 per month for 10 months (provided plaintiff did not die or remarry in the meantime),[6] ordered each party to perform the agreement, including the delivery to plaintiff by defendant of a dismissal with prejudice of the Santa Clara County quiet title action and a quitclaim deed to the property therein described; also ordered payment to plaintiff of $7,350 attorneys' fees and $932.86 costs. As we have shown the McGee judgment is proper insofar as it related to its adoption of the Lercara judgment. We will discuss the award of attorneys' fees and costs later. As to all the other requirements of the McGee judgment, they are provided for in the 1960 agreement. The findings of fact upon which the judgment is based show that the amounts mentioned in the judgment, including the 10 monthly payments at $1,000 per month, are the unpaid amounts which defendant in the agreement agreed to pay. ■ Once the court found that agreement to be valid and subsisting, the requirement that both parties perform the agreement according to its terms, automatically followed.

3. Appeal No. 20381. Support Award.

On May 18, 1961, an order was made requiring defendant to pay plaintiff forthwith $1,000 for support, $212.04 costs and $2,350 attorneys' fees. Defendant contends that as plaintiff was standing on the contract and asking specific performance of it, and as in the contract plaintiff agreed that

---

[6]This was the unpaid balance of the order for support made May 18, 1961 (see appeal No. 20381).

the provision for support therein ($1,000 per month for 15 months) was accepted by her "in complete discharge and settlement of any and all rights of support from husband" the court had no power to award her any support outside the contract. Plaintiff, on the other hand, contended, and the court determined, that inasmuch as defendant at first contended that the contract was invalid, and then that because of plaintiff's alleged breach, defendant had rescinded the contract, such attacks on the contract empowered the court to award support pendente lite, even though plaintiff was asking the court to order the contract enforced.

The normal power of the court to make pendente lite orders is established by Civil Code section 137.2. Section 137.3 vests the court with like power to award fees and costs.[7] ■ While it is true that an integrated property settlement agreement, the validity of which is not in issue, limits the court's power to order temporary support and counsel fees contrary to the terms of the agreement (see *Patton* v. *Patton* (1948) 32 Cal. 2d 520, 523-524 [196 P.2d 909]) the restrictive effect of property settlement agreements has been limited to agreements which have been conceded to be valid. ■ Where such an agreement "is attacked as being void or as having been obtained through fraud, the court may make an award for necessary temporary support, counsel fees and costs. [Citations.]" (*Spreckels* v. *Spreckels* (1952) 111 Cal. App.2d 529, 532 [244 P.2d 917]; *Nacht* v. *Nacht* (1959) 167 Cal.App.2d 254, 268 [334 P.2d 275].)

While defendant now contends that his position is, and always has been, that the parties made a valid June agreement, his trial brief contended strenuously that the June 16 agreement was "void ab initio." Even though defendant now concedes that the agreement is valid, he contended and still contends that it is unenforceable as to him, because his wife breached it, and he rescinded it. Because of defendant's refusal to perform, his wife was compelled to sue to establish that the agreement was still in force. ■ In *Verdier* v. *Verdier* (1950) 36 Cal.2d 241, 246 [223 P.2d 214], it was held: "A separation agreement that the husband has failed to perform is not a bar to the wife's action for separate maintenance, even though she does not repudiate the agreement or seek to set it aside." The wife in a separate maintenance action is not barred from obtaining support, attorneys'

[7]The 1960 agreement provides for the payment of attorney's fees to the successful party required to bring action to enforce the agreement.

fees and costs by the separation agreement which the husband fails or refuses to perform. (See *Verdier* v. *Verdier, supra,* 36 Cal.2d 241, 248; *Verdier* v. *Verdier* (1958) 162 Cal.App. 2d 325, 329 [327 P.2d 934].)

■ However, although the wife is entitled to alimony pendente lite where the husband is attacking the property settlement agreement, if she is successful in establishing the agreement as valid and enforceable, she becomes bound by its terms, and if in the agreement she has waived alimony altogether or as limited in the agreement, she is required to account for the temporary support paid her under the court order, and credit it against the husband's overall indebtedness to her. ■ Although, where a husband repudiates a settlement agreement in which the wife waives support other than as therein stated, the wife may bring a separate maintenance action and in it also ask that the court establish the agreement as valid, there comes a time in the action where she must elect as to whether she is going to stand on the agreement if valid, or whether because of the husband's repudiation of the agreement she wants separate maintenance with all the rights which would be hers, were there no agreement.

In *Verdier* v. *Verdier, supra,* 36 Cal.2d 241, it was held that although there is an inconsistency in an action for separate maintenance where there is a property settlement agreement in which the wife waives, or agrees to accept a limited amount of, support, she is entitled to support pendente lite, but must eventually elect what relief she is seeking, enforcement of the contract or separate maintenance under section 137, Civil Code. In *Verdier* v. *Verdier, supra,* 162 Cal. App.2d 325, the court held that the election referred to above would not have to be made until final judgment in the action. It was said that to require election in advance of an order to obtain pendente lite relief would " '. . . run counter to the whole purpose and policy of the . . . cases holding that the wife is entitled to such pendente lite relief even though there is an *issue* in the case which, if determined against her, would end her rights . . .' " (P. 329.)

Although the *Verdier* agreement was not an integrated one, the principle there enunciated must necessarily apply to an integrated agreement. See also *Locke Paddon* v. *Locke Paddon* (1924) 194 Cal. 73 [227 P.715]. There the wife in an action for divorce sought to set aside, on the ground of the husband's fraud, a property settlement agreement in which the wife waived all right to support other than as therein set

forth. In upholding an award for temporary support, attorneys' fees and costs, the reviewing court approved the order of the trial court which provided that if the agreement which the wife was seeking to set aside were declared to be a binding agreement, then " '. . . all such payments as shall have been made to . . . [the wife] on account of alimony *pendente lite* as aforesaid, shall be credited upon the sums payable under the said contract.' " (P. 84.)

Thus, under the authorities, inasmuch as defendant was attacking the validity and enforcement of the settlement agreement, the court had the power to make the award which it made in the order of May 18. As the court sustained the validity and enforceability of the contract, defendant, had he paid the amount ordered, would have been entitled to a credit of the $1,000 so ordered paid, on the amounts found due from him to plaintiff under the contract. But he did not pay, so there is nothing for which plaintiff should account. However, as no accounting of this sum appears in the final judgment, it would not be equitable for plaintiff to collect it. Thus, the order, although enforceable up to the time of the final judgment, becomes *functus officio* and is no longer effective. It should be reversed on such grounds.

4. APPEALS No. 20236, No. 20381, No. 20382. THE ATTORNEYS' FEES WERE NOT EXCESSIVE.

On February 27, 1961, an order was made providing that no further alimony pendente lite should be paid; that defendant should pay plaintiff's attorneys $5,000 additional attorneys' fees and $720.82 costs. Defendant appeals from the award of attorneys' fees and costs (appeal No. 20236). May 18, 1961 (appeal No. 20381), an additional attorneys' fee of $2,350 was awarded. In the final judgment in appeal No. 20382 this total sum of $7,350 was duplicated, with the provision, however, that it should not be paid twice.

The 1960 agreement provided that the party who is required to obtain performance under the agreement shall be entitled to attorneys' fees if the action is determined in that party's favor. Plaintiff successfully sought to obtain performance. Hence the awards were proper.

▮▮▮▮ The test of a reasonable attorney's fee is set forth in *Pope* v. *Pope* (1951) 107 Cal.App.2d 537, 539 [237 P.2d 312] : "In determining the amount of a reasonable fee the trial court is permitted to consider various factors : The nature of the litigation, its complexity, the nature and extent of the contest, the amount involved, the financial circumstances of

the parties, the skill required, the professional standing and reputation of the husband's attorneys and of the attorneys selected by the wife, are some of the relevant matters to be considered. [Citations.]''

 The values in controversy in this action and to obtain which plaintiff was required to bring the action are as follows: (1) $25,000 which defendant agreed to pay plaintiff in the 1960 agreement. (2) Real property of the value of $13,000 as to which defendant agreed to release all claims. In addition, plaintiff was required to resist defendant's claim that she had breached the agreement to his alleged damage in the sum of $30,000 and to resist defendant's claim that he was entitled to $17,000 for alleged breach of the 1959 agreement. Thus, the amount involved to which the attorneys' services were directed was some $85,000. Plaintiff's attorneys testified that they devoted at least 365 hours to the case. The clerk's transcripts show the complexity of the matters involved. The reporter's transcript of 1,516 pages shows the length of the trial. Plaintiff's attorneys assumed great responsibility and their work was successful. The amount of attorneys' fees to be awarded is a matter in the sound discretion of the trial court and an order fixing such fees will not be reversed except upon a showing of an abuse of discretion. (*Sigesmund* v. *Sigesmund* (1953) 115 Cal. App.2d 628, 633 [252 P.2d 713].) There was no abuse here.

The attempted appeal No. 20252 is dismissed. The order in appeal No. 20236 is affirmed. The order in appeal No. 20381, being *functus officio,* is reversed. The judgment in appeal No. 20382 is affirmed. Plaintiff will recover costs on all appeals.

Sullivan, J., and Molinari, J., concurred.

A petition for a rehearing was denied February 13, 1963, and appellant's petition for a hearing by the Supreme Court was denied March 20, 1963. Schauer, J., did not participate therein.