[Civ. No. 19051. Second Dist., Div. Three. Oct. 1, 1952.]

WILLIAM HENRY CLAY SHRIVER, Appellant, v. THOMAS H. KUCHEL, as State Controller, Respondent.

Elizabeth Cochran and James E. Pawson for Appellant.

James W. Hickey and Walter H. Miller for Respondent.

VALLÉE, J.—Plaintiff, William Henry Clay Shriver, brought this action for declaratory relief against the State Controller. He seeks a declaration as to whether he, as a transferee of property made to him during the lifetime of S. C. Clay Shriver, is liable to the State of California for interest on inheritance taxes.

S. C. Clay Shriver died on June 14, 1947. On December 1, 1947, the State Controller filed a petition (LBC 14374) for determination of inheritance tax. The petition alleged: Shriver was a resident of Los Angeles at the date of his death; he was, prior to his death, the owner of stocks and bonds situate in

Los Angeles County; the stocks and bonds were transferred by him prior to his death in contemplation of death; an inheritance tax is due and payable. On December 1, 1947, an order was made designating an inheritance tax appraiser and referee. On January 9, 1948, the report of the inheritance tax appraiser was filed. On February 2, appellant filed an answer to the petition and objections to the report of the inheritance tax appraiser. This document denies the allegations of the petition and alleges: Shriver was a resident of Kansas at all times mentioned and at the date of death; he left a will which was admitted to probate, and a finding made of his residence in the probate court of Butler County, Kansas; the stocks and bonds described in the petition and all property of Shriver was located and is held under the jurisdiction of the probate court of Butler County, Kansas, and is in the possession of the executor of Shriver's will; the transfers alleged in the petition were made and consummated while the transferor and the transferee were nonresidents of California and none of the property is or was ever within the jurisdiction of the Superior Court of this State. On February 16, 1949, the report of the inheritance tax appraiser, as referee, was filed. It reported that decedent was a resident of the county of Los Angeles at the date of death; and that there was a tax due from appellant in the amount of $85,262.26.

On May 22, 1950, a stipulation, entitled "Stipulation For Sustaining Of Objections In Part," was entered into between the State Controller and appellant which reads:

"WHEREAS, the Inheritance Tax Appraiser has heretofore filed in these proceedings a report of the amount of inheritance tax due; and

WHEREAS, objections thereto have been filed by William Henry Clay Shriver, and

"WHEREAS, an agreement of compromise has been reached by and between the parties,

"Now, THEREFORE, IT IS AGREED that the amount of inheritance tax due the State of California from the said William Henry Clay Shriver shall be reduced from the sum of $85,262.26 as shown in said report by allowing as a credit against said sum the amount of $37,897.46;

"IT IS FURTHER STIPULATED that an order be made by the Court pursuant to this stipulation, directing the inheritance tax appraiser to file an amended report herein fixing the tax at the reduced amount;

"IT IS FURTHER STIPULATED that the said order may include

that there should be paid to the inheritance tax appraiser as fees for services in the sum of $660.71."

On August 22, 1950, the stipulation was filed and an order made by the court which reads:

"Upon reading and filing the stipulation for sustaining of objections in part entered into by and between attorneys for petitioner and respondents, and good cause appearing therefor,

"It Is Hereby Ordered, Adjudged and Decreed that the inheritance tax be and the same is hereby set in the amount of $47,364.80, allowing a credit against the original tax in the sum of $37,897.46;

"It Is Further Ordered that the State Inheritance Tax Appraiser, Harland V. Boyer, be directed to file an amended report fixing the tax accordingly.

"It Is Further Ordered that the Inheritance Tax Appraiser's fee be paid in the sum of $660.71."

Prior to the making of the foregoing order and on July 10, 1950, appellant paid $47,364.80 to the County Treasurer of the County of Los Angeles. On December 8, 1950, he filed the present action for declaratory relief. The complaint alleges the facts we have narrated and that the document dated May 22, 1950, was a compromise; that the Controller "is now insisting upon the payment of penalty as, of and from the date of death of S. C. Clay Shriver, although willing to consent to a remission for the two year period from and after the death, and is threatening to bring an action against this plaintiff under the provisions of sections 14211 and 14212 of the Revenue and Taxation Code of the State of California"; that a bona fide controversy exists between the parties; and that "plaintiff paid the amount of the tax within a reasonable time after the determination, as a full settlement of the controversy existing over the question of the residence of the deceased had been entered into."

The Controller answered alleging that the written stipulation for compromise was executed pursuant to and as a result of an oral compromise entered into by and between plaintiff and defendant on August 8, 1949; that the compromise included the amount of tax only and was not understood by either party to include either interest or penalties; that the $47,364.80 paid by plaintiff was applied first to interest in the sum of $1,454.68 owing on the tax as of the date of payment, and the balance to the tax itself. The sum of $1,454.68 remains unpaid on the tax, with interest.

The only evidence introduced at the trial was the file in the proceeding for the determination of inheritance tax (LBC 14374) and an oral stipulation between the attorneys for the parties, as hereinafter appears. The court found and concluded that the compromise related to the amount of inheritance tax only and it was not understood by either party thereto that the amount agreed upon as a compromise was intended to cover the full amount of the tax and interest, but, on the contrary, was intended to cover the amount of tax only. Judgment was that interest is owing on the unpaid portion of the tax from the date of death until payment is made in full.

Plaintiff contends that upon the payment of the sum of $47,364.80, pursuant to the stipulation of compromise and the order approving the same, he has fully discharged his obligation to the State of California with respect to inheritance taxes and interest, and that no further sum is due thereon. This contention must necessarily find support in the agreement of compromise.

Compromise agreements are governed by the legal principles applicable to contracts generally, the primary object being to ascertain the intention of the parties, which is to be determined from the writing itself, construed in the light of the circumstances surrounding its execution, including the object, nature, and subject matter of the agreement, and the preliminary negotiations between the parties. (*Lemm* v. *Stillwater Land & Cattle Co.*, 217 Cal. 474, 479 [19 P.2d 785], et seq.; *Hammond Lbr. Co.* v. *Cravens*, 82 Cal.App. 685, 691 [256 P. 428]; 5 Cal.Jur. 384, § 1; 15 C.J.S. 735, § 21.) In California a valid compromise agreement has many of the attributes of a judgment, and in the absence of a showing of fraud or undue influence is decisive of the rights of the parties thereto and operates as a bar to the reopening of the original controversy. (*Armstrong* v. *Sacramento Valley R. Co.*, 179 Cal. 648, 650 [178 P. 516]; *Frankfield* v. *Freiberger*, 216 Cal. 266 [13 P.2d 905]; *Fouratt* v. *Goodman*, 203 Cal 252, 254 [263 P. 533]; *Lamb* v. *Herndon*, 97 Cal.App. 193, 203 [275 P. 503]; *Silver* v. *Shemanski*, 89 Cal.App.2d 520, 531 [201 P.2d 418].) A compromise agreement is conclusive between the parties as to the matters compromised.

Compromise agreements, however, " 'regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to

matters which the parties never intended to include therein, although existing at the time.' (8 Cyc. 520, 521.)'' (*Lemm* v. *Stillwater Land & Cattle Co., supra,* 217 Cal. 474, 482.)

The right of the state to an inheritance tax vests immediately upon the transferor's death (Rev. & Tax. Code, § 14102), although at that time the state may not know its amount. Inheritance taxes do not bear interest if paid before they become delinquent, which is two years after the death of the transferor. (Rev. & Tax. Code, § 14103.) It is only when they are not paid within the two-year period that they bear interest and then, under the 1943 statute, from the date of death until paid. (Rev. & Tax. Code, (1943) § 14211.) The inheritance tax appraiser fixes only the amount of the tax. (Rev. & Tax. Code, §§ 14506, 14509.) Thus it appears that interest is not such an integral part of the tax as to be an indispensable part thereof, but is an item which is determinable separate and distinct from the determination of the tax and is determined only in the event the tax is not paid before the delinquent date. This being so, it seems reasonable to conclude that it is not an item which would normally be included in a compromise of a tax itself unless it can be said that it was an item within the contemplation of the parties at the time of the compromise.

With the foregoing principles in mind, it is apparent that the parties did not intend to include the item of interest in their compromise agreement. The stipulation and the order approving it are silent as to any reference to ''interest'' and refer only to the ''tax.'' It is to be noted that the stipulation is stated to be a ''Stipulation For Sustaining Of Objections *In Part.*'' The italicized words, ''In Part,'' we think are significant as denoting an intention to limit the compromise and distinguishes it from those various forms of compromise which are intended by the parties to be all-inclusive. That this was their intent is manifest from the recital in the stipulation that an agreement for compromise ''has been reached,'' and that the inheritance tax due California ''be reduced from the sum of $85,262.26 as shown in said report by allowing as a credit against said sum the amount of $37,897.46.'' It appears from the oral stipulation entered into by the attorneys at the trial of this action,[1] that 1) the sum of $37,897.46, allowed as a

---

[1] '''Mr. BARKER [Attorney for the State Controller]: I don't like to take the stand and testify. Will you stipulate that on or about August the 5th, 1949, there was an oral agreement between you and myself that we should compromise the Kuchel suit, LBC 14374, on the basis that the California inheritance tax would be determined on the basis that the

credit against the reported tax, was the entire amount of the inheritance tax due the State of Kansas, 2) the agreement of August 5, 1949, was grounded "on the basis that the California inheritance tax would be determined on the basis that the decedent was a California resident and would be deducted therefrom the amount of the Kansas inheritance tax," and 3) the essence of the agreement of August 5, 1949, was subsequently incorporated in the written stipulation. It is, we think, significant that on August 5, 1949, no mention of interest was made or considered by either of the parties, although the period within which the tax could have been paid without interest had passed and interest on the unpaid inheritance tax was due and payable although not then computable because of the controversy as to residence. Since interest was not considered it cannot be maintained that it was within the contemplation of the parties when the compromised figure of the tax was finally agreed to.

Since the judgment in the proceeding to determine the tax (LBC 14374) has become final, the question of the Controller's authority to make the compromise is immaterial and moot.

Affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

---

decedent was a California resident and would be deducted therefrom the amount of the Kansas inheritance tax, which at that time you understood to be $17,000? Will you stipulate that that is a fact?

"MR. PAWSON [Attorney for plaintiff]: Yes, with one qualification. I will stipulate that we discussed it and had a tentative agreement. It wasn't an oral agreement. In fact, in the first place an oral agreement wouldn't be enforceable against either. We were discussing it at that time, and we put it over until we could determine, and we were going to discuss it later. I will go along to that extent.

"MR. BARKER: There was a tentative compromise?

"MR. PAWSON: Yes. We discussed it from the first time we got together on the matter. In other words, we were always negotiating and talking about what could be done.

"MR. BARKER: There was a tentative compromise on the basis I have enumerated prior to the effective date of Section 14195, and will it be stipulated that later you ascertained that the Kansas inheritance tax instead of being $17,000 was $37,897.46, and you asked us whether we were then willing to carry out the original compromise on the basis of allowing as a deduction against the California inheritance tax the larger amount of the Kansas inheritance tax as determined?

"MR. PAWSON: Yes, we discussed that.

"MR. BARKER: Is it stipulated that I made a counter proposition to you that instead of allowing $37,897.46 we should allow $27,897.46, and you refused to accept that counter compromise, and then later the State of California finally acquiesced in your proposition that the entire amount of the Kansas inheritance tax should be deducted from the California inheritance tax?

"MR. PAWSON: Resulting in the ultimate written agreement, yes."