**Eddie B. STROZIER**

v.

**GENERAL MOTORS CORPORATION.**

Civ. No. C75–49A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 22, 1977.

S. Ralph Martin, Jr., Atlanta, Ga., for plaintiff.

John A. Pickens, Kidd, Pickens & Tate, Charles H. Kirbo, King & Spalding, Atlanta, Ga., for defendant.

## ORDER

O'KELLEY, District Judge.

On January 9, 1975, plaintiff brought this action against his employer, defendant General Motors Corporation [hereinafter "General Motors"], under 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. On November 7, 1975, the court granted defendant's motion to dismiss the complaint as a class action. On January 9, 1976, the defendant filed a motion for summary judgment. However, the court deferred ruling on the defendant's motion pending the outcome on appeal of either *Stansell v. Sherwin-Williams Co.*, Civil No. C75–379A (N.D.Ga. Nov. 18, 1975), or *Turner v. Texas Instruments, Inc.*, 11 FEP 748 (N.D.Tex.1975). Following decisions in *Turner v. Texas Instruments, Inc.*, 556 F.2d 1349 (5th Cir. 1977), and *Page v. U. S. Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977), this court lifted the stay and ordered the parties to file renewed motions. Accordingly, this action is presently before the court on the defendant's renewed motion to dismiss or in the alternative for summary judgment.

Plaintiff's complaint consists of four claims grounded on four disciplinary actions taken against him by General Motors. These disciplinary actions occurred on August 20, 1970 (discharge from employment); March 3, 1972 (30 day disciplinary layoff); April 5, 1973 (30 day disciplinary layoff); and June 5, 1973 (discharge from employment). The plaintiff alleges that the defendant's initial disciplinary action against him occurred as a result of defendant's racially discriminatory disciplinary system and that the subsequent disciplinary actions were in retaliation for his having filed a charge of discrimination with the EEOC.

## I.

DO THE PLAINTIFF'S TITLE VII CLAIMS MEET THE STATUTORY JURISDICTIONAL PREREQUISITES?

The defendant contends that this court lacks jurisdiction over the plaintiff's Title

VII claims for several reasons. First, defendant argues that plaintiff's action should be dismissed because he failed to file his charge of discrimination with the EEOC within the time period required under 42 U.S.C. § 2000e–5(e). Specifically, defendant submits that plaintiff did not file a charge of discrimination with the EEOC until February 18, 1971, well beyond 90 days after the date of the alleged initial discriminatory discharge of August 20, 1970. Plaintiff contends, however, that his February 18, 1971 EEOC charge based upon the August 20, 1970, discharge was timely because a 180 day time limit rather than a 90 day time limit was applicable to the case *sub judice*. Furthermore, even if his initial charge of discrimination with the EEOC were untimely, plaintiff argues that his delay was excused because he was pursuing union grievance procedures during that period. Although *Electrical Workers v. Robbins & Meyers, Inc.*, 429 U.S. 229, 97 S.Ct. 441, 50 L.Ed.2d 427 (1976), overruled the decisions in *Hutchings v. United States Industries, Inc.*, 428 F.2d 303 (5th Cir. 1970), and *Culpepper v. Reynolds Metals Co.*, 421 F.2d 888 (5th Cir. 1970), and held that the existence and utilization of grievance procedures does not toll the running of the time limits applicable to filing charges with the EEOC, plaintiff submits that *Electrical Workers* should be applied prospectively only.

Initially, the court notes that regardless of whether the 90 day or the 180 day filing requirement under 42 U.S.C. § 2000e–5, as amended, applies to the case *sub judice*, it is clear that the plaintiff did not comply with either. On the date plaintiff filed his charge with the EEOC, February 18, 1971, 183 days had expired from the date of the alleged discriminatory discharge of August 20, 1970. With respect to plaintiff's argument that *Electrical Workers* should not be applied retroactively, several recent decisions are indicative of the inclination of the Fifth Circuit Court of Appeals to apply the "no tolling" decisions of the United States Supreme Court retrospectively. *See, e. g., Page v. U. S. Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977). Moreover,

courts in other circuits have expressly applied *Electrical Workers* retroactively. *See, e. g., Gray v. International Telephone & Telegraph Corp.*, 428 F.Supp. 199 (E.D.Mo. 1977). Accordingly, because the filing of a charge of discrimination within the statutory period is a jurisdictional prerequisite for bringing a Title VII action to federal court, plaintiff's Title VII claim grounded on the alleged discriminatory discharge of August 20, 1970, should be and is hereby dismissed. *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977).

Second, defendant contends that the plaintiff has failed to file this action within 90 days after receipt of notification from the EEOC that conciliation has failed as required under 42 U.S.C. § 2000e–5(f)(1). *See, e. g., Franks v. Bowman Transportation Co.*, 495 F.2d 398, 404 (5th Cir. 1974). Specifically, defendant shows that on October 1, 1973, the EEOC sent plaintiff a letter regarding plaintiff's charges of discrimination filed on February 18, 1971 (August 20, 1970, discharge), and March 8, 1972 (March, 1972, disciplinary layoff), notifying plaintiff that its efforts at conciliation had been unsuccessful and that he could, if he so desired, request issuance of a right-to-sue letter. Therefore, the defendant contends that because the plaintiff did not bring the present action until January 9, 1975, well beyond 90 days after the October 1, 1973, letter, this court lacks the requisite jurisdictional basis over plaintiff's action under 42 U.S.C. § 2000e–5(f)(1). In opposition to defendant's contentions, the plaintiff argues that the October 1, 1973, letter from the EEOC indicating that conciliation efforts were unsuccessful did not trigger the 90 day period within which an action must be brought. Specifically, plaintiff submits that under the decision in *Zambuto v. American Telephone & Telegraph Co.*, 544 F.2d 1333 (5th Cir. 1977), the EEOC must communicate both the failure of conciliation *and* its decision not to sue in order to give proper statutory notice triggering the running of the 90 day statutory period. Accordingly, plaintiff contends that because

such a letter was not obtained in the present action until October 18, 1974, in response to plaintiff's October 15, 1974, request therefor as required by the initial notification letter of October 1, 1973, this action, brought on January 9, 1975, is, in fact, timely.

■ In accordance with the decisions of the United States Court of Appeals for the Fifth Circuit in *Page v. U. S. Industries, Inc.*, 556 F.2d 346 (5th Cir. 1977), and *Turner v. Texas Instruments, Inc.*, 556 F.2d 1349 (5th Cir. 1977), this court agrees with the plaintiff. Both *Page* and *Turner* state that an EEOC complainant must be clearly informed of the termination of the administrative process before the 90 day statutory period is triggered. Contrary to the defendant's arguments herein, the *Page* court held that this requirement applies to all EEOC complaints under the invalidated two-letter system whenever this system resulted in ambiguity in determining a complainant's right to sue, notwithstanding the absence of affirmatively misleading circumstances:

> The March 25 letter only related that conciliation efforts had failed; it did not inform her that the EEOC had decided not to sue. Perhaps she could have inferred this from the EEOC's reminder of her right to sue, but the reminder was ambiguous. She could easily have read it as saying that the EEOC still contemplated suit, but she might choose to institute her own action. It is true that, unlike *Zambuto*, the March 25 letter does not affirmatively mislead Ms. Williams as to when she may file suit, but neither does it convey sufficient notice of the termination of the administrative process. . .
> The same equitable considerations that led us to allow Mrs. Zambuto to pursue her action convince that we should permit Ms. Williams to continue her action.

*Page, supra. See also DeMatteis v. Eastman Kodak Co.*, 520 F.2d 409 (2d Cir. 1975). Accordingly, because *Turner* and *Page* make it clear that the *Zambuto* invalidation of the EEOC two-letter system is to be applied prospectively only, the court concludes that the October 1, 1973, letter was insufficient to trigger the running of the 90 day period in the case *sub judice*. Therefore, the plaintiff's filing of the present Title VII claims was timely. However, as a consequence of this ruling, only those charges of discrimination which were the subject of the October 18, 1974, "right-to-sue letter" are now properly before the court. Accordingly, because the October 18, 1974, "right-to-sue letter" related solely to the charges of discrimination arising from the disciplinary actions of April 5, 1973, and June 5, 1973, there has never been effective notification of a right to sue with respect to the incidents occurring in March, 1972. Thus, plaintiff's Title VII claim arising from the March, 1972, incident should be and is hereby dismissed. *See, e. g., United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Gibson v. Kroger Co.*, 506 F.2d 647, 652 (7th Cir. 1974), *cert. denied*, 421 U.S. 914, 95 S.Ct. 1571, 43 L.Ed.2d 779 (1975); *Stebbins v. Continental Insurance Co.*, 143 U.S.App. D.C. 121, 442 F.2d 843 (1971).

II.

HAS THE PLAINTIFF STATED CLAIMS FOR WHICH RELIEF MAY BE GRANTED UNDER SECTION 1981?

■ Plaintiff's claims under 42 U.S.C. § 1981 are grounded upon the same four disciplinary actions which are the basis of his Title VII claims, discussed *supra*. Defendant argues that the plaintiff's section 1981 claims predicated upon the disciplinary incidents of March, 1972, April 5, 1973, and June 5, 1973, concern merely alleged *retaliatory* discrimination and, therefore, are not cognizable under section 1981, citing *Tramble v. Convertors Ink Co.*, 343 F.Supp. 1350, 1354 (N.D.Ill.1972). In the court's view, however, the defendant should not be able to emasculate plaintiff's section 1981 claims by clothing them with the Title VII scheme under which they would be deemed claims of retaliatory discrimination. It is well settled that section 1981 is an independent remedy available to plaintiffs without regard to the limitations applicable to claims

brought under Title VII. *See, e. g., Alpha Portland Cement Co. v. Reese,* 507 F.2d 607 (5th Cir. 1975); *Sanders v. Dobbs Houses, Inc.,* 431 F.2d 1097 (5th Cir. 1970). The rationale behind this precept for evaluating claims brought under section 1981 and Title VII has been expressed very clearly:

> Section 1981 and Title VII, in truth, provide for such radically different schemes of enforcement and differ so widely in their substantive scopes that using the policies behind the latter to create procedural barriers to actions under the former would stretch to the breaking point the courts' customary duty to accommodate allegedly conflicting legislation.

*Macklin v. Spector Freight Systems, Inc.,* 156 U.S.App.D.C. 69, at 86, 478 F.2d 979 at 996 (1973). In civil rights actions, pleadings are to be liberally construed such that a district court is warranted in granting a motion to dismiss only where the plaintiff could prove no stated facts entitling him to relief. *See, e. g., Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Barnes v. Merritt,* 376 F.2d 8 (5th Cir. 1967). Accordingly, because the essence of the plaintiff's allegations herein is that he has been denied equal treatment in his employment with the defendant because of his race, the court concludes that merely because certain of plaintiff's section 1981 claims would be characterized as claims founded upon *retaliatory* discrimination under Title VII, they should not be dismissed as not cognizable under section 1981. *See Windsor v. Bethesda General Hospital,* 523 F.2d 891 (8th Cir. 1975).

### III.

### ARE THE PLAINTIFF'S SECTION 1981 CLAIMS TIME BARRED?

 Defendant contends that plaintiff's section 1981 claims grounded on the disciplinary actions of August 20, 1970, and March, 1972, are time barred. Although there is no specifically stated federal statute of limitations for section 1981 claims, the controlling period of limitations for such claims is that most appropriate under state law. *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Where such actions are seeking back pay as part of general remedial relief, as in the case *sub judice,* the courts in this district apply the state statute of limitations which governs actions for unpaid wages. *See, e. g., United States v. Georgia Power Co.,* 474 F.2d 906 (5th Cir. 1973). Ga.Code Ann. § 3–704 provides that all suits seeking recovery of wages, overtime or damages accruing under statutes respecting the payment of wages are governed by a two-year limitation period. Accordingly, now that the plaintiff's action has been limited to his individual claims, it must have been brought within two years from the date on which it accrued, notwithstanding that the plaintiff filed the Title VII claims with the EEOC during the two year period. It is settled that the applicable state statute of limitations is not tolled by the filing of a Title VII charge of discrimination with the EEOC. *See Johnson, supra; Williams v. Phil Rich Fan Manufacturing Co.,* 552 F.2d 596 (5th Cir. 1977). Therefore, it is clear that plaintiff's section 1981 claims grounded on disciplinary actions taken on August 20, 1970, and February, March, 1972, were not filed within two years and should be and are hereby dismissed as time barred.

### IV.

### DID PLAINTIFF'S ACCEPTANCE OF MONETARY BACK PAY AWARDS AND REINSTATEMENTS IN EMPLOYMENT AS SETTLEMENTS OF HIS GRIEVANCES ARISING FROM DEFENDANT'S DISCIPLINARY ACTIONS CONSTITUTE A WAIVER OF HIS RIGHT TO PURSUE ACTIONS UNDER TITLE VII AND SECTION 1981 BASED ON THOSE SAME DISCIPLINARY ACTIONS?

 Having determined that the plaintiff has stated valid and timely claims under Title VII and section 1981 insofar as they are predicated upon the defendant's disciplinary actions against him of April 5, 1973, and June 5, 1973, the court must now

consider the merits of those claims in light of his prior settlements with the defendant. Both the testimony of the plaintiff in his deposition and the affidavit of Mr. Gary Smith filed by the defendant with its original motion for summary judgment on January 9, 1976, clearly establish that the plaintiff has settled each and every grievance filed by him in connection with the same disciplinary actions being challenged herein through the employee grievance procedure maintained by the defendant at its Lakewood Assembly Plant in Atlanta, Georgia. Twice the plaintiff herein has discussed and negotiated his claims with representatives of the defendant. Twice he has been awarded, has received, and has accepted a monetary settlement, including reinstatement in the employment of defendant and payments tolling $15,930.48 (gross). Plaintiff specifically testified in his deposition that he received and accepted the defendant's checks for the aforesaid back pay awards. Accordingly, defendant submits that plaintiff has waived his right to bring this action because it is grounded upon the very same disciplinary actions which were the subject of the two prior settlement agreements.

Although it appears that no court has previously faced and decided what effect an employee's acceptance of a monetary settlement for back pay and reinstatement would have on such an employee's section 1981 and Title VII rights, the United States Supreme Court has suggested that an employee can waive his cause of action under Title VII if he voluntarily accepts a settlement obtained through his employer's internal grievance procedures, providing him with relief "substantially equivalent" to that provided under Title VII. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). In determining whether a monetary settlement is an effective waiver of a complainant's Title VII rights, the *Gardner-Denver* Court stated that "a court would have to determine at the outset that the employee's consent to the settlement was voluntary and knowing." *Id.* at 52 n. 15, 94 S.Ct. at 1021. In the case *sub judice*, there can be no doubt

that plaintiff's receipt and acceptance of the settlements granting monetary awards of back pay and reinstatement were voluntary and knowing. First, plaintiff testified in his deposition that he knowingly received and accepted the defendant's checks for the aforesaid back pay awards. Second, the fact that such payments were sought and accepted on two separate occasions manifests the plaintiff's knowledge that he was receiving the monetary awards and reinstatements in settlement of his claims against the defendant arising from the alleged discriminatory discharges in suit herein. Finally, fatal to any arguments that the settlements in question were not voluntary and knowing is the fact that the plaintiff was represented by his present counsel at the time the second settlement was reached and accepted. Accordingly, the court concludes that there is no doubt that plaintiff's consent to the settlements in question was voluntary and knowing as required by the *Gardner-Denver* Court.

In opposition to defendant's contentions that plaintiff's acceptance of these settlements constitutes a waiver of his rights under Title VII and section 1981 as they are grounded upon the subject of those settlements, plaintiff argues that these settlements were only partial and that a complainant cannot be deemed to have waived his rights under section 1981 and Title VII unless such settlements are expressly conditioned upon a waiver of those rights. This court disagrees. Where an employee voluntarily and knowingly accepts settlement relief substantially equivalent to that obtainable under Title VII and section 1981, he has waived his right to resort to the judicial forum to obtain additional relief under Title VII and section 1981 if such additional relief is grounded upon the same alleged discriminatory conduct that forms the basis of the voluntary settlement. This rule is consistent with the previously articulated policy against employee windfalls:

> In no respect does . . . *Gardner-Denver* support the assertion that an aggrieved employee who freely settles his or her unliquidated demand with the em-

ployer or the union may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled. Very frankly, we cannot conceive of how any employment discrimination dispute could ever be resolved outside, or indeed inside, the courtroom if defendants were forbidden to obtain binding, negotiated settlements. No defendant would ever deliver money, promises, or any other consideration—not even a peppercorn—except after entry of a contested, final court order . . . .
The EEOC and judicial caseloads would swell to chaotic dimensions. Industrial peace would be needlessly threatened. The situation would be greatly inequitable . . . .

*United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 at 858 (5th Cir. 1975). Accordingly, because of the plaintiff's acceptance of monetary settlements from the defendant, the defendant's motion for summary judgment on the remaining claims herein is hereby granted.