Herbert O. OKONKO, Plaintiff,

v.

UNION OIL COMPANY OF CALIFORNIA, Defendant.

No. CV 79–2969–WMB.

United States District Court, C. D. California.

July 10, 1981.

Kelso & Young, Nancy Kelso, Calvin M. Young, Los Angeles, Cal., for plaintiff.

Paul, Hastings, Janofsky & Walker, Mark W. Atkinson, Arlene Falk Meyers, Los Angeles, Cal., for defendant.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

WM. MATTHEW BYRNE, Jr., District Judge.

Plaintiff, a Black native of Nigeria who is now a permanent resident of the United

States, brought this action alleging that Union Oil Company of California ("Union Oil") discriminated against him in employment on the basis of race and national origin. The complaint alleges that various actions by Union Oil between August 27, 1976, and June 8, 1979, violated his rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1981, and that those acts constituted breaches of his contract of employment.

Defendant moved for partial summary judgment on two theories: first, that a portion of plaintiff's claims under § 1981 and the employment contract theories are barred by the appropriate California statutes of limitation; and second, that the settlement of a charge filed by plaintiff on August 27, 1976, with the Equal Employment Opportunity Commission ("EEOC"), barred any suit for employment discrimination relating to incidents before that date.

### FACTS

Union Oil first hired plaintiff in October, 1970, as a Plantman in its Los Angeles Terminal. In April, 1971, he was assigned to a Lab Technician position, which he held until Friday, August 6, 1976. On that date the Terminal Superintendent permanently relieved him of the Lab Technician position and advised him to go home to decide if he would prefer to be terminated or demoted to Plantman. On Monday, August 9, 1976, plaintiff advised the Superintendent that he preferred demotion and he began work as a Plantman on the following day. On August 12, 1976, he left work on sick leave and did not return to work until May 23, 1977.

On August 27, 1976, while on sick leave, plaintiff filed a charge with the EEOC. Shortly thereafter, although the date is not clear from the record, he engaged an attorney to represent him in that matter. The attorney had regular contact with Union Oil during the pendency of the charge.

When plaintiff returned to work he accepted placement as a General Clerk in the Administrative Office of the Los Angeles Terminal. He worked until November 22, 1977, when he again left on sick leave. When he returned to work on January 15,

1979, he accepted placement in a Trainee position. On June 8, 1979, he was terminated from Union Oil's employ.

This complaint was filed on August 7, 1979, although not formally served until January 28, 1980. Union Oil acknowledges that plaintiff gave it a copy of the complaint shortly after its filing.

In January, 1980, Union Oil and plaintiff's attorney negotiated a settlement of the charge that had been filed with the EEOC in 1976, by which Union Oil agreed to pay plaintiff $4,718.70. Union Oil prepared, and sent to plaintiff, a general release for his signature. It reads in relevant part:

> In consideration of the terms and provisions of the Settlement Agreement entered into as of even date herewith, I do hereby ... release, acquit and forever discharge Union Oil Company of California ... from any and all claims, actions, causes of action, rights, demands, debts, damages, or accountings of whatever nature, whether known or unknown, from the beginning of time to the date hereof, excepting only those matters set forth in the Settlement Agreement.

Union Oil sent with this General Release and Settlement Agreement a cover letter stating, in relevant part:

> I wish to withdraw my lawsuit filed against Union Oil Company of California in Case No: 79–02969 and all other charges filed against Union Oil Company of California.
>
> The reason I wish to withdraw or dismiss this lawsuit and all other charges is that I have entered into an agreement with the Company resolving all differences between myself and Union Oil Company of California.

Plaintiff refused to sign the general release and, instead, signed an EEOC form Settlement Agreement. The Agreement provided in relevant part:

> 1. In exchange for the promises made by Union Oil Company of Calif. contained in paragraph (2) of this agreement, Herbert O. Okonko agrees not to institute a

lawsuit under Title VII of the Civil Rights Act of 1964, based on charge number TLA6–3563 [the 1976 charge] filed with the Equal Employment Opportunity Commission . . . .

.   .   .   .   .

3. This agreement constitutes the complete understanding between the Respondent, Charging Party and the Equal Employment Opportunity Commission. No other promises or agreements shall be binding unless signed by these parties.

A representative of Union Oil also signed the EEOC form Settlement Agreement and sent a check to plaintiff in the agreed amount in late January, 1980.

During the course of the settlement discussions, plaintiff filed a second charge against Union Oil with the EEOC on January 9, 1980. That charge, like the complaint in this case, alleged various acts of discrimination, beginning with his demotion to Plantman in 1976 and culminating with his termination from employment in 1979.

*STATUTE OF LIMITATIONS*

Union Oil contends that plaintiff is barred by the appropriate statute of limitations from seeking relief for any and all actions prior to August 7, 1976 on the § 1981 claim and August 7, 1977 on the breach of contract claim.

The controlling limitations period for a cause of action under § 1981, which

does not contain its own statute of limitations, "would ordinarily be the most appropriate one provided by state law." *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1975). Under California law, the most appropriate statute of limitations is three years. *See Bratton v. Bethlehem Steel Corp.*, 649 F.2d 658, 663–64 (9th Cir. 1980).

*Wiltshire v. Standard Oil Co. of California*, 447 F.Supp. 756, 765 (N.D.Cal. 1978), *appeal pending*, No. 78–2030 (9th Cir.); Cal.Code Civ.Proc. § 338(1) (West Supp.1981). As to the breach of contract claim, California provides for a two-year statute of limitations for breach of an oral contract. *See* Cal.Code Civ.Proc. § 339(1).[1]

The complaint in this case was filed on August 7, 1979. Thus, unless some tolling principle applies, plaintiff is barred from seeking relief for any conduct by defendant occurring prior to August 7, 1976 on the § 1981 claim and for any breach of contract occurring before August 7, 1977.

The filing of an administrative complaint with the EEOC does not, by itself, "toll the running of the statute of limitations on a cause of action under § 1981 based on the same facts." *London v. Coopers & Lybrand*, 644 F.2d 811, 814 (9th Cir. 1981) (citing *Johnson*).

In an action brought under § 1981, state tolling principles are applied as part

---

1. If, however, plaintiff's contract cause of action is based on the breach of a written collective bargaining agreement, the applicable statute of limitations is four years. *See* Cal.Code Civ.Proc. § 337(1) (setting forth period for claims on a breach of a written contract). Although the defendant contends that the agreement had a mandatory grievance and arbitration procedure, which plaintiff did not pursue, neither party has submitted that contract to the Court. Nevertheless, the failure to exhaust the remedies provided by the collective bargaining agreement generally bars judicial enforcement of its terms. *See Clayton v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, — U.S. —, 101 S.Ct. 2088, 2091, 68 L.Ed.2d 538 (1981); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 564, 96 S.Ct. 1048, 1055–56, 47 L.Ed.2d 231 (1976); *Walker v. Southern Ry.*, 385 U.S. 196, 197–98, 87 S.Ct. 365, 366, 17

L.Ed.2d 294 (1966); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652–53, 85 S.Ct. 614, 616–17, 13 L.Ed.2d 580 (1965). There is an exception to the exhaustion requirement if the plaintiff alleges that the union has breached its duty of fair representation. *See Clayton*, 101 S.Ct. at 2092 n.4; *Hines*, 424 U.S. at 563–67, 96 S.Ct. at 1056–58; *Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967); *Williams v. Pacific Maritime Ass'n*, 617 F.2d 1321, 1328 (9th Cir. 1980), *cert. denied*, 449 U.S. 1101, 101 S.Ct. 896, 66 L.Ed.2d 827 (1981). Plaintiff does not come within the exception because the complaint does not allege that the union's failure, if any, was "arbitrary, discriminatory, or in bad faith." *Vaca*, 386 U.S. at 190, 87 S.Ct. at 916. Therefore, plaintiff cannot maintain his claim for breach of a written contract, the collective bargaining agreement, unless he amends his complaint to allege that the union breached its duty of fair representation.

of the state statute of limitations as long as those tolling principles are not inconsistent with the purposes of the federal legislation. *See Board of Regents of the University of the State of New York v. Tomanio,* 446 U.S. 478, 485–86, 100 S.Ct. 1790, 1795–96, 64 L.Ed.2d 440 (1980); *Johnson,* 421 U.S. at 463–65, 95 S.Ct. at 1721–22; *Conerly v. Westinghouse Electric Corp.,* 623 F.2d 117, 119 (9th Cir. 1980). There is no statutory provision in California law that would toll the statute of limitations for a § 1981 action during the pendency of an administrative charge before the EEOC. *Bratton,* 649 F.2d at 662.

■ California courts have recognized a doctrine of equitable tolling and applied the doctrine where plaintiff is pursuing an administrative remedy for the same alleged wrongdoing. *See London,* 644 F.2d at 814–15, *citing Jones v. Tracy School District,* 27 Cal.3d 99, 611 P.2d 441, 165 Cal.Rptr. 100 (1980); *Elkins v. Derby,* 12 Cal.3d 410, 525 P.2d 81, 115 Cal.Rptr. 641 (1974). The *London* court, however, held that the application of California's equitable tolling doctrine to toll a § 1981 action where a claim was pending before a state administrative agency would be inconsistent with federal law. 644 F.2d at 814–15. The Ninth Circuit indicated that the deferral to administrative attempts to conciliate was an integral part of the Title VII enforcement mechanism. Given that the independence of Title VII and § 1981 as separate civil rights remedies must be strictly maintained, the *London* court found it inconsistent with federal policy to delay § 1981 enforcement, by applying the doctrine of equitable tolling, while conciliation of the Title VII claim is attempted by the appropriate agency. Although the charge in *London* was pending before the California Fair Employment Practices Commission, it is clear that the goal of conciliation is equally apposite where the charge, as here, is before the EEOC.

Therefore, because no tolling is available to plaintiff, he cannot recover on his § 1981 claim for actions prior to August 7, 1976.

The doctrine of equitable tolling might, however, provide a basis for tolling the state law breach of contract claim. The doctrine was applied in *Elkins v. Derby,* 12 Cal.3d 410, 525 P.2d 81, 115 Cal.Rptr. 641 (1974), to hold that the statute of limitations for a personal injury cause of action was tolled while the plaintiff was pursuing a workmen's compensation claim against the defendant. In *Addison v. California,* 21 Cal.3d 313, 578 P.2d 941, 146 Cal.Rptr. 224 (1978), the California Supreme Court explained its application of the doctrine in *Elkins*:

> In such a case, we noted, defendant can claim no substantial prejudice, having received timely notice of possible tort liability upon filing of the compensation claim, and having ample opportunity to gather defense evidence in the event a court action ultimately is filed. We also noted the long settled rule that whenever exhaustion of administrative remedies is a prerequisite to a civil action the running of the limitations period is suspended during the administrative proceedings ... and we stated that "regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled '[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues.'" [citations omitted].

> .     .     .     .     .

> [T]he doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff.

21 Cal.3d at 318, 319, 578 P.2d at 943, 943–44, 146 Cal.Rptr. at 226, 227. In *Addison* the plaintiff filed a timely action in federal court that was dismissed for lack of jurisdiction after the statute of limitations had expired. Just prior to that dismissal, plaintiff filed an action in state court, which was dismissed by the trial court on the grounds that the action was barred by the statute of limitations. The Court held that the doc-

trine of equitable tolling applied to toll the statute of limitations during the pendency of the federal suit; thus, the state court action was timely.

In *Jones v. Tracy School District*, 27 Cal.3d 99, 611 P.2d 441, 165 Cal.Rptr. 100 (1980), in a suit brought under California Labor Code § 1197.5, the trial court had applied the statute of limitations to limit plaintiff's recovery of back wages for sex discrimination to the two years prior to the filing of the complaint. The California Supreme Court remanded the case to the trial court to determine whether the statute of limitations for the sex discrimination suit was equitably tolled while the plaintiff pursued a parallel but separate remedy with the United States Department of Labor pursuant to 29 U.S.C. § 206(d)(1) (1978).

Although the fact situations in *Elkins, Addison,* and *Jones* are distinguishable from the instant case, the doctrine established in those cases may apply to the facts present here. In this case, as in *Jones,* plaintiff was pursuing an administrative remedy to redress discrimination, which was an alternative, and not a prerequisite, to the court action seeking recovery for discrimination. Based upon *Jones,* it is relatively clear that the California Supreme Court would hold that the pendency of a Title VII charge before the EEOC could toll the statute of limitations for other factually-related claims, as long as the requirements that trigger the application of the equitable tolling doctrine, as stated in *Addison* ("timely notice, and lack of prejudice to the defendant, and reasonable and good faith conduct on the part of the plaintiff") are satisfied.

▅ In scrutinizing the factual record presented in this motion for partial summary judgment, the Court can find no uncontested facts that would bar the application

of the equitable tolling doctrine to the contract claim. Clearly, there are genuine issues of fact that must be decided at trial in determining whether the doctrine should apply in this case.

Finally, the Court must determine whether the California equitable tolling doctrine, as applied to the contract claim, would be inconsistent with any federal policy so as to prohibit its application in this case. The Supreme Court has not yet considered whether a state law that would provide for such tolling for a state law cause of action would be inconsistent with federal policy underlying Title VII actions. Where state law provides for a rational tolling rule based on analysis of the principles that underlie the statute of limitations,[2] the federal policy of retaining separate and independent remedies for discrimination under Title VII and § 1981 would not prevent the application of such a rule to a pendent claim for breach of contract that arises from the same circumstances as underlie the Title VII charge.

Therefore, because there is no tolling available for the § 1981 cause of action, plaintiff may not recover damages for actions by defendant prior to August 7, 1976 and defendant's motion for partial summary judgment is granted as to that claim. Because the Court finds that the California rule of equitable tolling might be applicable to the state law breach of contract claim, defendant's motion for partial summary judgment is denied as to that claim.

## THE EFFECT OF THE SETTLEMENT OF THE 1976 EEOC CHARGE

Union Oil contends that the Settlement Agreement, entered into between the parties in January, 1980, bars plaintiff from pursuing Title VII, § 1981, or contract rem-

2. The rationales for equitable tolling, explained in *Elkins,* are a) that such tolling "will not frustrate achievement of the limitations statute's primary purpose," which is to prevent " 'surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared,' " *quoting Order of R.R. Telegraphers v. Railway Express Agency,* 321 U.S. 342, 348–49, 64 S.Ct. 582, 586, 88

L.Ed. 788 (1944); b) that duplicative filings can work an injustice on an injured party who may rely upon his administrative remedy without realizing that he should file a legal action on a separate theory in order to preserve his remedies; and c) that duplicative filings impose unnecessary burdens on the plaintiff, the employer and the "overtaxed judicial system." *Elkins v. Derby,* 12 Cal.3d 410, 417–20, 525 P.2d 81, 86–88, 115 Cal.Rptr. 641, 646–48 (1974).

edies arising out of allegedly discriminatory actions prior to August 27, 1976, the date plaintiff filed his original charge with the EEOC. Because plaintiff is barred by the statute of limitations from recovering on his § 1981 claim for actions prior to August 7, 1976, granting the motion for partial summary judgment as to that claim would preclude recovery only for acts by defendant between August 7 and August 27, 1976.

■ A settlement agreement is a type of contract, the interpretation of which is governed by the principles of local law applicable to contracts generally. *See Glazer v. J.C. Bradford & Co.*, 616 F.2d 167, 169 (5th Cir. 1980); *Cumming v. Johnson*, 616 F.2d 1069, 1072 (9th Cir. 1979); *Dacanay v. Mendoza*, 573 F.2d 1075, 1077–80 (9th Cir. 1978); *Florida Education Ass'n, Inc. v. Atkinson*, 481 F.2d 662, 663 (5th Cir. 1973); *Plymouth Mutual Life Insurance Co. v. Illinois Mid-Continent Life Insurance Co.*, 378 F.2d 389, 391 (3d Cir. 1967). The applicable local law in this case is that of California, which is stated in *Shriver v. Kuchel*, 113 Cal.App.2d 421, 425, 248 P.2d 35, 38 (1952):

> Compromise agreements are governed by the legal principles applicable to contracts generally, the primary object being to ascertain the intention of the parties, which is to be determined from the writing itself, construed in the light of the circumstances surrounding its execution, including the object, nature, and subject matter of the agreement, and the preliminary negotiations between the parties.

California law allows a plaintiff to settle some of the claims arising from a factual situation without necessarily settling all possible claims. As the court held in *Shriver*:

> A compromise agreement is conclusive between the parties as to the matters compromised. Compromise agreements, however, " 'regulate and settle only such matters and differences as appear clearly to be comprehended in them by the intention of the parties and the necessary consequences thereof, and do not extend to matters which the parties never intended to include therein, although existing at the time.' 8 Cyc. 520, 521." *Lemm v. Stillwater Land & Cattle Co.*, [217 Cal. 474, 482, 19 P.2d 785, 789 (1933)].

113 Cal.App.2d at 425–26, 248 P.2d at 38; *see also In-Sink-Erator Manufacturing Co. v. Waste King Corp.*, 346 F.2d 248, 252 (7th Cir. 1965) (applying *Shriver v. Kuchel* in interpreting a settlement agreement under California law).

Under the terms of this Settlement Agreement, plaintiff "agrees not to institute a lawsuit under Title VII of the Civil Rights Act of 1964, based on [the 1976] charge . . . ." That charge alleged that Union Oil discriminated against plaintiff in (a) relieving him of his Lab Technician position and (b) assigning him to a Plantman position. Although it is not clear whether this suit is based on the 1976 charge or the 1980 charge,[3] the Settlement Agreement must be read to be a relinquishment by plaintiff of his right to pursue a Title VII remedy for any of the incidents of discrimination encompassed in the 1976 charge. Therefore, the Court concludes that plaintiff is barred from suing under Title VII with respect to any and all events preceding August 27, 1976. The Settlement Agreement, however, does not mention the institution of actions seeking remedies under § 1981 or for breach of contract. The fact that plaintiff did not expressly agree not to bring such suits, together with the fact that the Settlement Agreement contains an integration clause stating that it represents the "complete understanding" between the parties, leads to the conclusion that it does not bar plaintiff from pursuing other remedies based on the alleged discriminatory actions

---

**3.** The complaint alleges that a charge has been filed with the EEOC, that a Right to Sue letter has been obtained, and that the complaint was filed within 90 days of receipt of the Right to Sue letter. This allegation must refer to the 1976 EEOC charge, because the second charge was not filed until 1980, which was after this suit was filed, in August 1979. It is unclear, from the record before this Court, whether a Right to Sue letter has been obtained as to the second EEOC charge on which plaintiff bases his Title VII claims for actions occurring after August 27, 1976.

prior to August 27, 1976. This interpretation is supported by the fact that Union Oil, before it signed the Settlement Agreement, was aware that this suit, containing § 1981 and breach of contract claims, had been instituted. Therefore, it knew that plaintiff might press those claims even after the settlement. Moreover, Union Oil preferred to plaintiff a release, which would have settled all of his discrimination causes of action. Plaintiff refused to sign that release and, thereafter, the parties executed the EEOC form settlement agreement. This undisputed sequence of events indicates that both parties were agreeing only to the narrow terms of the EEOC form settlement agreement and that neither believed that plaintiff was actually agreeing to relinquish either § 1981 or breach of contract claims.

Union Oil argues that, regardless of the intent of the parties as a matter of federal policy, the settlement of a Title VII charge must be interpreted to settle all related claims, including those under § 1981 and those alleging a breach of an employment contract. It relies primarily on *United States v. Allegheny-Ludlum Industries, Inc.*, 517 F.2d 826 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976), and on three cases that follow it: *Mosley v. St. Louis Southwestern Railway*, 22 Fair Empl.Prac.Cas. 835 (E.D.Tex.1980), *rev'd*, 634 F.2d 942 (5th Cir. 1981); *Lyght v. Ford Motor Co.*, 458 F.Supp. 137 (E.D.Mich. 1978); *Strozier v. General Motors Corp.*, 442 F.Supp. 475 (N.D.Ga.1977), *appeal dismissed*, 584 F.2d 755 (5th Cir. 1978), *aff'd*, 635 F.2d 424 (5th Cir. 1981).

The *Allegheny-Ludlum* case involved the settlement of a massive pattern and practice discrimination suit against certain steel companies and unions. Under the terms of that settlement, a fund of $30,940,000 was established to pay claimants back pay. In order to receive back pay under the settlement, a claimant had to agree to release all claims against the defendants arising from alleged discrimination on the basis of race, color, sex, or national origin occurring on or before the date of entry of the consent decree in the case. Claimants were specifically required to relinquish the right to sue under Title VII, § 1981, Executive Order 11246, the United States Constitution, the Labor Management Relations Act, 29 U.S.C. § 151 *et seq.*, and any other federal, state or local constitutional or statutory provisions. Certain parties in that case contended that it was contrary to national public policy to require claimants to relinquish all of these related causes of action in order to obtain back pay under the settlement in the pattern and practice suit. The court held that it was not against public policy to approve a settlement that required individual claimants to relinquish a broad range of remedies in order to obtain the settlement of a back pay claim. The court noted that each individual claimant had the opportunity to participate or not, and that if he chose not to make a claim, he retained his full range of legal and administrative remedies. 517 F.2d at 859 n.38. The court observed that it could find no basis to

> support the assertion that an aggrieved employee who freely settles his or her unliquidated demand with the employer or the union may reciprocate by suing the same defendant at a later date on the same cause of action, merely because the employee grows dissatisfied with the payment for which he or she settled. Very frankly, we cannot conceive of how any employment discrimination dispute could ever be resolved outside, or indeed inside, the courtroom, if defendants were forbidden to obtain binding, negotiated settlement. No defendant would ever deliver money, promises, or any other consideration—not even a peppercorn—except after entry of a contested, final court order, and even this, on appellants' reasoning, might not end the matter.

517 F.2d at 858–59. In this case Union Oil argues the obverse of the question considered in *Allegheny-Ludlum*, that it is a violation of public policy to allow a claimant to settle only a Title VII claim and not related claims. Therefore, little guidance can be derived from the *Allegheny-Ludlum* discussion because the terms of the settlement agreement there were so different

from the terms of the Settlement Agreement in the case at bar.

The three other cases cited by Union Oil are more apposite. In *Strozier v. General Motors Corp.* the district court held that the plaintiff's settlement of grievances regarding disciplinary actions by his employer barred suits under Title VII and § 1981 based on the same disciplinary actions, stating that

> [w]here an employee voluntarily and knowingly accepts settlement relief substantially equivalent to that obtainable under Title VII and section 1981, he has waived his right to resort to the judicial forum to obtain additional relief under Title VII and section 1981 if such additional relief is grounded upon the same alleged discriminatory conduct that forms the basis of the voluntary settlement.

442 F.Supp. at 481. The Fifth Circuit, in affirming, held that even though statutory claims were not expressly covered in the settlement of the grievances, recovery upon them was foreclosed insofar as "[t]he remedy sought and settled was the precise remedy sought in this lawsuit." 635 F.2d at 426. The court noted that where a remedy was sought in a statutory claim that was not covered by the settlement agreement, a suit might lie to obtain that relief. *Id.* at 426–27.

In *Lyght v. Ford Motor Co.*, the court relied upon *Allegheny-Ludlum* and the *Strozier* district court opinion to hold that a plaintiff's knowing and voluntary settlement of a claim before the Michigan Civil Rights Commission barred his Title VII suit despite the fact that plaintiff was not represented by counsel in negotiating the settlement, which was not in writing, and which did not provide any back pay. 458 F.Supp. at 142. Finally, the district court in *Mosley v. St. Louis Southwestern Railway* decided that an EEOC settlement agreement, similar to the one in the case at bar, prevented a plaintiff from bringing a Title VII or § 1981 suit based on the same conduct as that alleged in the settled EEOC charge.[4] The court stated:

> Obviously, if settlement agreement reached through the conciliation efforts of the EEOC could be avoided by the simple expedient of suing under § 1981, no employer would have any incentive to settle claims pursuant to the fact finding, "no fault" settlement, or other conciliation proceedings of the EEOC, and the role of the EEOC in fostering the conciliation of employment discrimination claims would be severely hampered if not effectively destroyed.

22 Fair Empl.Prac.Cas. at 838. The Fifth Circuit reversed the dismissal of plaintiffs' claims on the ground that their denial of access to counsel vitiated the settlement agreements; it declined to address the contention that those agreements did not affect the § 1981 claims. 634 F.2d at 946–47 & n.6.

This Court disagrees with the district court's holding in *Mosley*. A plaintiff, whether *pro per* or represented by counsel, who signs a form EEOC settlement agreement, which appears on its face to release only Title VII claims, should not be held to have relinquished all factually-related causes of action for employment discrimination for which different damages and remedies may be obtained.[5] To find other-

---

**4.** The EEOC form Settlement Agreement at issue in the *Mosley* case is, in all relevant language, identical to the Settlement Agreement at issue here except that it does not contain an integration clause, which states that the Settlement Agreement represents the complete understanding between the parties. *See* 22 Fair Empl.Prac.Cas. at 837.

**5.** Even if a plaintiff obtained full Title VII back pay relief, there are other forms of relief, including compensatory and punitive damages, which are available under § 1981 and breach of contract causes of action. *See Johnson v. Rail-*

*way Express Agency, Inc.*, 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); *Bradshaw v. Zoological Society of San Diego*, 569 F.2d 1066 (9th Cir. 1978). Plaintiff here, moreover, seeks damages for mental suffering and emotional distress, which are not recoverable under Title VII. Although he should, therefore, have the opportunity to prove that remedies in addition to those he received under the settlement are warranted, to the extent that he has been compensated thereunder he is barred from seeking a double recovery through his related claims.

wise would be contrary to the spirit of numerous cases that emphasize the separate and independent natures of actions under Title VII and actions under § 1981. *See Johnson*, 421 U.S. at 459, 95 S.Ct. at 1719; *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47, 94 S.Ct. 1011, 1019, 39 L.Ed.2d 147 (1974); *London*, 644 F.2d at 815; *Kirk v. Rockwell International Corp.*, 578 F.2d 814, 820 (9th Cir.), *cert. denied*, 439 U.S. 1004, 99 S.Ct. 616, 58 L.Ed.2d 680 (1978); Reiss, *Requiem for an "Independent Remedy": The Civil Rights Acts of 1866 and 1871 as Remedies for Employment Discrimination*, 50 So. Cal.L.Rev. 961 (1977).

In interpreting the effect of a settlement agreement reached through the conciliation efforts of the EEOC it is significant that the EEOC can only enter into a conciliation agreement as to the Title VII charge. *See* 42 U.S.C. § 2000e–5 (1976). Furthermore, in this case, the parties appeared to appreciate the limited effect of the EEOC settlement agreement and thus should be bound to its exact terms. Union Oil attempted to negotiate a settlement whereby plaintiff would release all claims. The plaintiff refused to sign the general release of all claims and, instead, executed the form agreement, relinquishing only his right to proceed with a Title VII action. Union Oil subsequently signed the same agreement and consummated the settlement.

The Court, therefore, declines to rule that, as a matter of law, the EEOC form settlement agreement bars claims based on the same facts brought under § 1981 or a related breach of contract cause of action and, therefore, denies defendant's motion for partial summary judgment, on that ground, as to the § 1981 and breach of contract claims.

If the EEOC does not contemplate the conciliation of claims other than those arising under Title VII, it would be helpful if the form that it uses clearly state whether the settlement does or does not release those other causes of action. An unambiguous agreement would assure that both parties entering into a settlement under the auspices of the EEOC know exactly what rights are thereby being released.

ACCORDINGLY,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED:

that defendant's motion for partial summary judgment is GRANTED as to the § 1981 claim for acts prior to August 7, 1976;

that defendant's motion for partial summary judgment is DENIED as to the § 1981 claim for acts between August 7 and August 27, 1976;

that defendant's motion for partial summary judgment is GRANTED as to the Title VII claim for acts prior to August 27, 1976; and

that defendant's motion for partial summary judgment is DENIED as to the breach of contract claim.